Filed 9/12/13  In re R.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.D. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E057882 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J245293 & J245294) |
| v. | O P I N I O N |
| K.P. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl Kersey, Judge.  Affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant K.P.

Brent Riggs, under appointment by the Court of Appeal, for Defendant and Appellant R.D.

1

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendants and appellants K.P. (Mother) and R.D. (Father) in this juvenile dependency case are the parents of J. and R.  The juvenile court took jurisdiction over the children pursuant to Welfare and Institutions Code section 300[1] and, at a disposition hearing, denied the parents reunification services.  The court also set a hearing to be held pursuant to section 366.26.  The parents did not appeal or petition for an extraordinary writ.  The case proceeded to the section 366.26 hearing where the court terminated their parental rights to the children.  The parents appealed.

The parents challenge the court's jurisdictional findings and the dispositional order denying reunification services.  Plaintiff and respondent San Bernardino County Children and Family Services (CFS) asserts that the parents waived these arguments by failing to file a petition for extraordinary writ.  We agree with CFS.  Mother also asserts that the court erred in denying a request she made at the section 366.26 hearing for a continuance so that she could file a request for change order, commonly referred to as a "section 388 petition."  She further argues that the court erred by failing to apply the beneficial parental relationship exception to terminating parental rights.  We reject these arguments and affirm the court's orders.

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  *Detention (July 2012)*

Prior to the events that led to this dependency case, Mother, Father, J., and R. lived in the maternal grandmother's home.  On July 22, 2012, when R. was one week old, Mother noticed that R. was fussy and crying, had a lot of mucous, and was having a hard time breathing.  She used an aspirator to clear the child's throat and noticed that the mucous had blood in it.  When R. began coughing up mucous mixed with blood, the parents took him to a hospital.  After being examined, R. was discharged from the hospital and the parents were instructed to follow up with a primary care physician and, if the condition worsened, return to the emergency room.

R. slept through the night and seemed fine most of the following day.  At around 8:00 in the evening, R. became fussy and cried a lot.  Father tried to give R. a pacifier, but he did not want it.  When Father took the pacifier out of R.'s mouth, it had blood on it.  His mouth was also full of blood.  They took R. to Loma Linda University Medical Center.

R. had blood in and around his mouth and the following injuries:  a one-inch laceration on his upper left thigh, a laceration behind his ear that looked like a small burn, bruises or Mongolian spots on his back, a torn frenulum (the skin between the lip and teeth), and scratches on his back, scalp, torso, and the back of his head.  A doctor told a social worker that "'there is no way a child that young could sustain such injuries without someone causing them.  It's child abuse.'"

The matter was investigated by the San Bernardino County Sheriff's Department. Two physicians told a sheriff's deputy that R.'s injuries were "not accidental." The parents told the deputy they did not know what happened to R. The maternal grandmother said that Mother and Father share a room in her house and that only the parents were in the room with R. after he was brought home from the hospital. She also said Father has "'anger issues'" and a history of domestic violence against Mother.

Father had been previously charged with spousal battery and was currently on probation. According to CFS, "[t]here is a current [temporary restraining order] between [Mother] and [Father] as long as the contact is not negative." The maternal grandmother said the parents had recently been fighting.

Father admitted slapping Mother after Mother hit him, but said that their problems "'are in the past.'" Father said he has been taking domestic violence classes and, although he said he still gets jealous and mad at Mother, he "'now [has] the tools to walk away.'"

Mother said there was only one incident of domestic violence. She and Father argued, and Father slapped and punched her in the face. Father was arrested after the maternal grandmother called the police.

When asked about R.'s injuries, Father told the social worker, "'we did not do it. . . .'" He thought the cut on the leg may have been due to R.'s car seat. He also suggested a source of the injuries could have been an incident that occurred when the family was lying on the bed and R. was asleep; J. jumped on the bed and rolled over R.'s

4

face. However, R. did not wake up or cry, and Father did not notice any bruising or injuries. Regarding the torn frenulum, Father said that when he gives R. a pacifier, he will put "'it in his mouth gently and take it out gently.'"

Mother and Father were arrested for violating Penal Code section 273d—willfully inflicting injury upon a child resulting in a traumatic condition.

On July 26, 2012, CFS filed juvenile dependency petitions regarding R. and 11-month-old J. Regarding R., CFS alleged dependency jurisdiction based on the parents' infliction of serious physical harm (§ 300, subd. (a)), failure to protect (§ 300, subd. (b)), severe physical abuse (§ 300, subd. (e)), and the parents' inability to support the child while incarcerated (§ 300, subd. (g)). Regarding J., CFS alleged dependency jurisdiction based on failure to protect (§ 300, subd. (b)), the parents' inability to support the child while incarcerated (§ 300, subd. (g)), and abuse of a sibling (§ 300, subd. (j)).

At a detention hearing, the court appointed separate counsel for each parent. The court found a prima facie case for jurisdiction under section 300 and placed the children in the temporary custody of CFS. The court ordered that the parents have no contact with the children. The children were placed with the maternal grandmother.

B. *Jurisdiction and Disposition (August – September 2012)*

In a jurisdictional/dispositional report, CFS recommended that the parents not be provided with reunification services and that a section 366.26 hearing be set. CFS supported its recommendation with a forensic report regarding R.'s injuries. The reporting physician opined: "This is a case of child physical abuse and neglect. [¶] This

5

newborn suffered mouth and neck injuries suspicious for an attempted strangulation or suffocation without confirmed brain injury. The mouth injuries could also be explained by forced penetration of the oral cavity with an object."

J. was referred for a medical examination for signs of physical abuse. The examiner found no specific injuries to J., but noted that "exposure to domestic violence constitutes neglect" and "substance abusing caretaker . . . constitutes neglect."

At the contested jurisdictional/dispositional hearing held on September 19, 2012, Mother and Father were present and represented by separate counsel. Regarding jurisdiction, the attorneys asserted general objections and stated they had no affirmative evidence. Minors' counsel stated she was "submitting on the recommendation." After considering the evidence submitted by CFS, the court dismissed allegations that were based on Mother's incarceration and found the remaining allegations true. The court declared the children dependents of the court, removed them from the parents, and ordered them placed with the maternal grandmother.

Regarding disposition, the parents' attorneys objected to the recommendation that no reunification services be provided, but offered no evidence and made no argument. The court denied reunification services to the parents after it found, based on clear and convincing evidence, that the children were brought within the court's jurisdiction under

6

section 300, subdivision (e) because of the conduct of the parents.[2]  A section 366.26 hearing was set for January 17, 2013.

The court informed the parents of their right to file a petition for an extraordinary writ with the Court of Appeal, the requirement that they file a notice of intent to do so within seven days, and that they "may use the form available at the clerk's office to notify the Court."

Neither parent appealed from the dispositional order or filed a petition for extraordinary writ or a notice of intent to do so.

C.  *Section 366.26 Hearing (September 2012 – January 2013)*

Mother and Father had supervised visits once each month between the jurisdictional/dispositional hearing and the section 366.26 hearing.  The social worker reported that, generally, Mother plays with J. and Father holds R.  Father is able to soothe R. when the child is fussy.  According to the social worker, the parents are appropriate with the children and show affection.  However, "[t]he children generally do not show reciprocation of affection."  When the visits are completed, the children are not distressed about leaving their parents.  During one visit, J. became distressed when Mother left the

---

[2]  Section 300, subdivision (e), provides for juvenile court jurisdiction when "[t]he child is under the age of five years and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child."  Under section 361.5, subdivision (b)(5), the court may deny reunification services when there is clear and convincing evidence that the child was brought within the court's jurisdiction under section 300, subdivision (e) because of the conduct of the parent.

room.  It was not clear to the social worker, however, whether the child's apprehension was because she was left alone or she wanted to be with Mother.

CFS recommended adoption as the permanent plan for the children.  The agency identified the maternal grandmother as the prospective adoptive parent.  Both children have lived in the maternal grandmother's home since they were born and were formally placed with the maternal grandmother in July 2012.  According to the social worker, the maternal grandmother is dedicated to the children and committed to raising them to adulthood.  The three of them "have developed a mutual attachment."

At the outset of the section 366.26 hearing, counsel for Mother requested a continuance so that she could file a section 388 petition.  She stated that Mother is participating in a domestic violence program, a child abuse prevention class, and a parenting program.  Mother had progress reports for her programs, but did not have any certificates of completion.  After counsel for CFS expressed opposition, the court denied the request.[3]

Mother testified at the section 366.26 hearing.  She said she does not agree with the recommendation to terminate parental rights and requested "a lesser permanent plan such as guardianship[.]"  She was the children's primary caregiver prior to removal. Mother could tell that J. (who could not yet speak) recognized her as her Mother because J. "always want[ed] to go to" her and would hug and kiss her.  R. (who was then six

---

[3]  After the court denied Mother's request for a continuance, Father's counsel stated:  "Although [Father] is not in a position to file a [section] 388 [petition], his preference would be that Mother have a chance to reunify with the children . . . ."

8

months old) recognized Mother as his mother because he does not cry when Mother is holding him. She does not believe terminating parental rights is in the best interests of the children because: "I am their mother, and I can care for them."

Counsel for Father stated that Father "is satisfied that the children are with the maternal grandmother, and he would just ask that the Court select a lesser plan of guardianship." Father did not, however, offer any affirmative evidence.

Minors' counsel expressed her agreement with the recommendation of adoption and argued that "there is no bond between the mother and the children."

The court stated that "although the parents have been appropriate [during visits], it does not rise to the level of a bond between the children and their parents." The court then ordered termination of parental rights and selected adoption as the children's permanent plan.

## III. ANALYSIS

A. *Waiver of Jurisdictional and Dispositional Claims*

The appeals in this case are taken from the January 17, 2013, orders terminating parental rights. In their briefs, each parent makes numerous arguments challenging the trial court's jurisdictional findings and the order denying reunification services made at the September 2012 dispositional hearing. Indeed, Father's arguments are directed *only* at such findings and order.

When, as here, the juvenile court sets a section 366.26 hearing at the dispositional hearing, all orders made at that hearing must be challenged by petition for extraordinary

9

writ.  (*In re Tabitha W.* (2006) 143 Cal.App.4th 811, 816-817 [Fourth Dist., Div. Two]; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 719 (*Cathina W.*); § 366.26, subd. (*l*).)  The petition must be preceded by the filing of a notice of intent to file the writ petition.  (Cal. Rules of Court, rule 8.450(e)(1).)[4]  Because the parents were present at the dispositional hearing, the notice of intent needed to be filed within seven days after the date of that hearing.  (Rule 8.450(e)(4)(A); *Cathina W., supra,* at p. 721.)  Neither parent did so in this case.

The failure to file a writ petition challenging dispositional orders and the underlying jurisdictional findings ordinarily waives any challenge to them asserted in a subsequent appeal.  (*In re T.W.* (2011) 197 Cal.App.4th 723, 729; *In re Athena P.* (2002) 103 Cal.App.4th 617, 625 [Fourth Dist., Div. Two] (*Athena P.*); *In re Rashad B.* (1999) 76 Cal.App.4th 442, 448; § 366.26, subd. (*l*)(1), (2).)  This so-called "waiver rule" is justified on numerous grounds, including:  (1)  "[T]he predominant interests of the child and the state in finality and reasonable expedition"; (2) the legislative intent to "expedite dependency cases and subordinate, to the extent consistent with fundamental fairness, the parent's right of appeal to the interests of the child and the state"; and (3) the "Legislature's intent, evident in section 366.26, subdivision (*l*), to restrict appeals challenging orders setting a [section 366.26] hearing."  (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1156-1157, fn. omitted.)

---

[4]  All further references to rules are to the California Rules of Court.

The waiver rule, however, will not be enforced when due process forbids it.  (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208 (*Janee J*).)  Due process in this context is implicated only if there is "some defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole."  (*Ibid*.)  For example, courts have held that the failure to notify the parent of the writ requirement following the setting of a section 366.26 hearing constitutes "good cause" for avoiding the waiver rule.  (See, e.g., *Cathina W., supra,* 68 Cal.App.4th at pp. 722-724; *Athena P., supra,* 103 Cal.App.4th at p. 625.)  As this court explained in *Athena P*.:  "The juvenile court is required to advise a parent of the writ petition requirement.  [Citations.]  If it fails to do so, in most cases the parent has good cause to be relieved of the requirement.  Thus, even though the parent failed to file a writ petition, he or she can still challenge, on appeal, the order setting a section 366.26 hearing.  [Citations.]"  (*Athena P., supra,* at p. 625; see also *In re Harmony B.* (2005) 125 Cal.App.4th 831, 838-839 [Fourth Dist., Div. Two]; *In re T.W., supra,* 197 Cal.App.4th at p. 729.)

Here, the parents were present at the time the court set the matter for a section 366.26 hearing.  The court advised them as follows:  "[T]he Court has set a hearing to make a permanent plan for the children.  If you wish to preserve your right to appeal the Court's decision, you must file a petition for extraordinary writ.  If you intend to file the petition for writ, you must file a notice of intent to file a writ petition and request for record with the juvenile court clerk within seven days of this date.  You may use the form

11

available at the clerk's office to notify the Court. Petition must be served and filed within ten days after the record is filed. Okay." Neither parent nor their counsel made any response.

Although the parents do not dispute that the court's statement provided them with notice of the writ requirement, they argue that they should nevertheless be excused from the requirement because the juvenile court told the parents they could "use the form available at the clerk's office" when a rule of court requires that the forms be available *in the courtroom*. (See rule 5.590(b)(4).)[5] We disagree.

Mother and Father each contend that "because" the court did not provide the writ forms in the courtroom, they can challenge the jurisdictional and dispositional rulings in this appeal. Initially, we reject any suggestion that *any* noncompliance with the court rule concerning the availability of the writ forms *necessarily* excuses the parents from that requirement. As explained above, relief from the waiver rule is a function of due process

---

[5] Rule 5.590(b) provides, in part: "When the court orders a hearing under Welfare and Institutions Code section 366.26, the court must advise all parties and, if present, the child's parent, guardian, or adult relative, that if the party wishes to preserve any right to review on appeal of the order setting the hearing under Welfare and Institutions Code section 366.26, the party is required to seek an extraordinary writ by filing a Notice of Intent to File Writ Petition and Request for Record (California Rules of Court, Rule 8.450) (form JV-820) or other notice of intent to file a writ petition and request for record and a Petition for Extraordinary Writ (California Rules of Court, Rules 8.452, 8.456) (form JV-825) or other petition for extraordinary writ. [¶] . . . [¶] (4) Copies of Petition for Extraordinary Writ (California Rules of Court, Rules 8.452, 8.456) (form JV-825) and Notice of Intent to File Writ Petition and Request for Record (California Rules of Court, Rule 8.450) (form JV-820) must be available in the courtroom and must accompany all mailed notices informing the parties of their rights." (Italics omitted.)

12

and depends upon a showing of "good cause." (See *Cathina W., supra,* 68 Cal.App.4th at pp. 722-724; *Athena P., supra,* 103 Cal.App.4th at p. 625.) Determining whether good cause is shown involves consideration of all the facts and circumstances at the time of the alleged error. (See, e.g., *In re T.W., supra,* 197 Cal.App.4th at pp. 730-731; *Janee J., supra,* 74 Cal.App.4th at p. 208.) Accordingly, the mere failure to have the forms available in the courtroom, without a showing as to how the parents were deprived of due process, is not enough to avoid the waiver rule.

Here, each parent was present in court at the time the section 366.26 hearing was set and were orally advised that if they desired to preserve their right to appeal, they must file a petition for extraordinary writ and, within seven days, a notice of intent to file a writ petition and request for record. Thus, there is no question that the parents received actual and timely notice of the section 366.26 hearing and of the writ requirement. Although the court's comment that the parents could get the requisite Judicial Council forms at the court clerk's office implies that the forms were not in the courtroom, no one complained about or objected to having to get the forms from the clerk's office. Nor was the matter mentioned at any other time during the juvenile court proceedings. There is nothing in the record indicating that the parents could not, in fact, get the forms from the clerk's office if they desired them or that either parent would have used the forms if they were in the courtroom.

Father expresses a concern for the "sometimes long lines at [the] clerk's windows and the layman's embarrassment at making a public request for the documents in a

13

dependency case . . . ." Mother adds that it "is reasonably probable that a parent, such as [Mother], would be so overwhelmed and overtaken by the fact that she was denied reunification services with her children that, the parent could [not] recall what form she is supposed to request when she gets to the clerk's office." These arguments are unpersuasive. Father's suggestion that a parent who believes he has been wrongfully deprived of the chance to reunify with his children would decide not to challenge that wrong because he would have to wait in a line or is too embarrassed to ask for a dependency form is specious. Moreover, there is no reason to believe that there was in fact a long line at the clerk's office or that Father actually feared embarrassment in this case.[6] We also reject Mother's speculative suggestion that a parent might be unable to recall which form to request from the clerk. In that event, the parent could easily ascertain the forms he or she needed by, for example, asking his or her attorney or the courtroom clerk.

Based on the facts and circumstances shown by the record in this case, the apparent absence of forms in the courtroom, while contrary to rule 5.590(b)(4), does not

---

[6] At oral argument, Father's counsel pointed out that Father was in custody at the hearing and presumably could not have walked to the clerk's office to get the necessary form. This, of course, would make irrelevant any concern he had about having to wait in a line and effectively negates the argument asserted in his brief. Even if he is correct that he could not have personally walked to the clerk's office, Father has failed to show that he actually desired the form or that his custodial status prevented him from obtaining the form by other means, such as by asking his attorney for the form.

constitute a violation of due process or good cause for the parents' failure to file a writ petition.[7] The parents are not, therefore, excused from the waiver rule on that basis.[8]

Mother and Father also assert that the waiver rule should not apply because of the alleged ineffective assistance of their respective attorneys. We reject this argument.

Generally, the waiver rule applies "even though the issues raised [on appeal] involve the important constitutional and statutory rights to counsel and to the effective assistance of counsel." (*In re Meranda P., supra,* 56 Cal.App.4th at p. 1151.) However, there is not "an *absolute* bar to review of ineffective assistance . . . claims tardily presented on a [section 366.26] hearing appeal." (*Janee J., supra,* 74 Cal.App.4th at p. 208; see also *In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1256-1257 [*In re Meranda P.* "still leaves the door open a crack for ineffective assistance challenges in statutorily provided-for appeals from [section 366.26 orders]"], overruled on another point in *In re Zeth S.* (2003) 31 Cal.4th 396, 413-414.)

---

**7** Although the parents have not shown that the court's failure to comply with rule 5.590(b)(4) constituted a violation of due process under the circumstances here, the failure to have the required form in the courtroom is no less a violation of the rule and, in some other case, could possibly result in a deprivation of due process. We suggest the court comply with the rule by having the requisite forms in the courtroom.

**8** Even if there was merit to their arguments regarding the unavailability of forms in the courtroom, the parents have waived or forfeited the argument on appeal by failing to raise it at the section 366.26 hearing. (See *Janee J., supra,* 74 Cal.App.4th at p. 210 [claim of inadequate notice and violation of due process waived when it was not raised at § 366.26 hearing]; *In re Cynthia C.* (1997) 58 Cal.App.4th 1479, 1491 [mother waived due process argument on appeal when she failed to raise the issue in the juvenile court].)

15

In order to avoid the waiver rule, the inadequacy of counsel must have "fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole." (*Janee J., supra,* 74 Cal.App.4th at p. 208.) Such protections include the right to appeal or petition for extraordinary writ following the disposition hearing and the setting of the section 366.26 hearing. (*Janee J., supra,* at pp. 208-209.) Thus, parents can avoid the waiver rule not only when the court failed to notify them of the writ requirement (as discussed above), but also when the failure to file a writ petition "was the direct result of ineffective assistance of counsel." (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1071 (*S.D.*).) The argument raises two issues: First, whether the parents have established that their respective counsel was ineffective; and second, if counsel was ineffective, whether the inadequate representation resulted in the parents' failure to file a writ petition.

In order to establish the ineffective assistance of counsel, a parent must show (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient representation was prejudicial; prejudice means a reasonable probability that, but for counsel's failings, the result of the proceeding would have been more favorable to the parent. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Burgener* (2003) 29 Cal.4th 833, 880; *In re Jackson W.* (2010) 184 Cal.App.4th 247, 261; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 621-622.) The burden of proving ineffective assistance is on the appellant. (*People v. Pope* (1979) 23 Cal.3d 412, 425.)

Ordinarily, "the proper way to raise an ineffective assistance claim is by writ of habeas corpus, not appeal." (*In re Eileen A., supra,* 84 Cal.App.4th at p. 1253; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) Raising the matter in a habeas petition provides an opportunity for an evidentiary hearing where counsel can explain his or her reasons for acting or failing to act in the manner complained of. (*People v. Pope, supra,* 23 Cal.3d at p. 426.) The court can then "intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence." (*Ibid.*, fn. omitted.) However, an ineffective assistance of counsel claim will be considered on appeal when "'there simply could be no satisfactory explanation' for trial counsel's action or inaction." (*In re Eileen A., supra,* at p. 1254, quoting *People v. Pope, supra,* at p. 426.)

Here, at the time set for the jurisdictional/dispositional hearing, the attorney for each parent requested that the jurisdictional hearing be set for trial. Mother's counsel indicated she intended to call Mother, Father, and the social worker as witnesses. The matter was then set for a contested hearing. However, at the time of the hearing five weeks later, each attorney made general objections to the allegations but offered no affirmative evidence to challenge them and made no argument to the court. At the dispositional hearing that followed, counsel again made a general objection to the recommendation to deny reunification services, but presented no evidence or argument. Father and Mother contend that their respective counsel were deficient by failing to effectively challenge the juvenile court's findings as to jurisdiction and reunification services.

17

The record does not reveal the reasons why the attorneys failed to offer affirmative evidence to challenge CFS's allegations and recommendations. However, we cannot say there could be no satisfactory explanation for doing so. The evidence CFS submitted included the detention report and the jurisdictional/dispositional reports, which provide detailed descriptions of interviews with Mother and Father. In essence, this evidence showed that the parents repeatedly told social workers, hospital staff, and a sheriff's deputy that they did not know what happened to R. and could not explain his injuries. Presumably, if the parents were to testify at the jurisdictional hearing, they would have repeated this assertion. It is thus entirely possible that counsel for the parents simply had no additional evidence helpful to their cause. Significantly, the parents have not identified in their appellate briefs any evidence that they believe should have been offered at the hearing. It is also possible that counsel made a tactical decision not to have their clients testify because of concerns about how they would fare on cross-examination. Counsel could have reasonably concluded that their clients' statements that they did not know what happened to R. would be best left unexamined.

Moreover, we cannot tell from our record whether the decision not to testify or offer other evidence was counsels', and not the clients', decision. At the time initially set for the jurisdictional/dispositional hearing, Mother's counsel indicated she would call Mother, Father, and the social worker as witnesses. It is possible the attorneys wanted the clients to testify when the contested hearing took place, but Mother and Father elected

18

not to do so.  The parents may have, for example, wanted to avoid testifying because of the pending criminal charges against Father.[9]

Because the record sheds no light on the reasons why counsel did not offer affirmative evidence at the hearing, and there are possible explanations for that decision, the parents have failed to establish ineffective assistance on that basis.

Nor does the record indicate the reasons why counsel did not present any argument to the court as to the jurisdictional allegations and the recommendation to deny reunification services to Mother.  However, a complete review of the record at the time of the jurisdictional/dispositional hearing suggests a possible reason.  At that time, the children had been placed with the maternal grandmother and continued to live in the house where they had lived since birth.  The social worker reported that it is in the best interests of the children to remain in that home.  At the dispositional hearing, Mother's counsel asked the maternal grandmother if she wanted to adopt the children.  The maternal grandmother said she did.  Mother's counsel requested of the court that no other home be assessed for permanent planning purposes, thereby indicating Mother's desire for the children to continue being placed with the maternal grandmother.  CFS's counsel said the agency would assess the maternal grandmother for that purpose and gave no indication the agency was considering placement with someone other than the maternal grandmother.  In light of these facts, it is possible that the decision to forego argument

---

[9] Although it appears that Mother was no longer in custody at that time, it is not clear from our record whether the charges against her had been dismissed or otherwise resolved.

may have been made by the parents because Mother was willing to accept permanent placement of the children with the maternal grandmother.  Father, who remained incarcerated on child abuse charges arising from R.'s injuries, would not have been in a position to disagree with Mother regarding this strategy.  The record does not indicate whether this scenario occurred or if there were other reasons for declining argument in the case.  However, because we cannot rule out the possibility that there is a satisfactory explanation for the decision, we cannot conclude that counsel was ineffective.

Moreover, even if counsel were deficient in failing to offer evidence and argument at the hearings, the parents have failed to show how these omissions "fundamentally undermined the statutory scheme so that [they] would have been kept from availing [themselves] of the protections afforded by the scheme as a whole." (*Janee J., supra,* 74 Cal.App.4th at p. 208.)  More specifically, the alleged defects in representation did not prevent the parents from challenging the court's jurisdictional findings and dispositional order by filing a timely petition for extraordinary writ.  If the parents believed that their attorneys should have put on evidence or argued the matter, such failures would have been obvious to them at the same hearing at which the court informed them of the need to file a writ petition in order to preserve their right to appeal.  There is nothing in the record to indicate that counsel did anything to keep them from doing so.

Although Father does attempt to blame his attorney for failing to file a writ petition, stating that his "counsel should have pursued writ relief under section 366.26, subdivision (*l*)," he does not elaborate on this point.  Courts have, however, rejected

similar arguments because "it is the parent, not the attorney, who has the burden to pursue appeal rights, particularly [as to the filing of a writ petition under section 366.26, subdivision (*l*)]." (*Janee J., supra,* 74 Cal.App.4th at p. 210; see also *Cathina W., supra,* 68 Cal.App.4th at pp. 723-724.)

Father relies heavily on *S.D., supra,* 99 Cal.App.4th 1068. In that case, the mother was incarcerated at the time of the jurisdictional hearing concerning her child. (*Id.* at p. 1074.) At the hearing, the mother's counsel conceded the allegation that the juvenile court had jurisdiction under section 300, subdivision (g) (failure to provide), stating that the "'statute is clear and provides for precisely this type of problem, *when a parent is incarcerated and unable to care for the child.*'" (*S.D., supra,* at p. 1074.) However, as the Court of Appeal explained, that statute "requires that the incarcerated parent be unable to *arrange* for the child's care." (*Id.* at p. 1077.) Thus, if the mother could arrange for the care of the child during her incarceration, the juvenile court had no basis for taking jurisdiction. (*Ibid.*) In fact, the mother had two sisters who were willing to care for the child. (*Id.* at p. 1078.) The attorney's misstatement of the law, the court stated, was "patent," "entirely legal, and quite fundamental." (*Id.* at pp. 1077, 1080.) Significantly, the attorney's concession "arguably waived" the mother's right to appeal the jurisdictional finding. (*Id.* at p. 1080.) Under these circumstances, the court concluded that the mother's failure to file a timely appeal "was the direct result of ineffective assistance of counsel." (*Id.* at p. 1071.) Therefore, "to ensure 'fundamental

21

fairness,'" the mother could raise the jurisdictional issue in her appeal from the section 366.26 hearing. (*S.D., supra,* at p. 1082.)

S.D. is distinguishable in several respects. First, as explained above, the parents have failed to establish they were deprived of the effective assistance of counsel. Second, unlike the attorney's fundamental and prejudicial misstatement of the law in *S.D.*, the parents in this case have not pointed to an analogous error by counsel; the alleged errors of counsel in this case involve the failure to present evidence and make arguments concerning the sufficiency of the evidence—not (as in *S.D.*) a patently incorrect statement of the law. Third, the attorney's misstatement in *S.D.* effectively conceded the only basis for juvenile court jurisdiction; by contrast, the court in this case found 10 independent bases for jurisdiction as to R. and eight independent bases for jurisdiction as to J. Fourth, even if counsels' failure to present evidence or argument constituted ineffective assistance, these omissions did not, like the attorney's concession in *S.D.*, effectively prevent the parents from filing a timely appeal or writ petition. We therefore reject the parents' reliance on *S.D.*

For all the foregoing reasons, we conclude that the parents waived their right to challenge the findings and orders made at the jurisdictional and dispositional hearings by failing to file a timely petition for extraordinary writ.

B. *Denial of Continuance to Allow Mother to File a Section 388 Petition*

At the time set for the section 366.26 hearing, Mother's counsel made the following statement: "For the mother, I am asking for time to file a [section] 388

[petition]. I did explain to her that a [section] 388 [petition] requires a change of circumstances. At this time, she has brought in progress reports indicating that she has been participating; however, I do not have any certificates of completion. I am asking, though, to have enough time to file a [section] 388 [petition], and perhaps by then, the mother will be able to provide me with some certificates of completion. [¶] And just for the record, Mother is currently participating in a domestic violence program, a child abuse prevention class, and also, I believe, a parenting program from Mental Health Systems."

Counsel for CFS opposed the request. The court stated: "I see where [Mother's counsel] is going, but her request is denied." The court then proceeded to hold the section 366.26 hearing.

On appeal, Mother contends the court's denial of the request for a continuance was an abuse of discretion. We disagree.

Section 388 allows a parent of a dependent child to petition the juvenile court to change, modify, or set aside any previous order of the juvenile court. The statute "'provides a means for the court to address a legitimate change of circumstances' and affords a parent her final opportunity to reinstate reunification services before the issue of custody is finally resolved. [Citation.]" (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1506.) In order to prevail on a section 388 petition, the parent "must establish that new evidence or changed circumstances exist so that the proposed change in the court's order

23

would promote the best interests of the child." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642.)

Requests for a continuance of a hearing in a dependency proceeding is governed by section 352. That statute provides that a court may, upon request and "only upon a showing of good cause," continue a hearing "provided that no continuance shall be granted that is contrary to the interest of the minor." (§ 352, subd. (a).) "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Ibid*.) We will reverse an order denying a continuance only upon a showing the court has abused its discretion. (*In re J. I.* (2003) 108 Cal.App.4th 903, 912.)

In this case, on the date set for the section 366.26 hearing, Mother's counsel represented that Mother is participating in, but has not completed, classes in domestic violence, child abuse prevention, and parenting. The request for a continuance was based, in essence, on counsel's hope that, "perhaps," Mother will complete the classes by the time she files a section 388 petition. Counsel did not indicate there would be any other evidence to support a section 388 petition. Nor did she indicate how Mother's possible completion of the classes might establish a legitimate change in circumstances or how any modification of a prior court order would be in the best interests of the children. Furthermore, Mother's counsel presented no argument as to how the continuance itself— which would necessarily delay the resolution of the children's custody status—would be

24

in the children's best interests.  Under these circumstances, the court did not abuse its discretion in denying the request for a continuance.

C. *The Beneficial Parental Relationship Exception to Adoption*

Mother contends the court erred in failing to apply the beneficial parental relationship exception to terminating parental rights set forth in section 366.26, subdivision (c)(1)(B)(i).  We reject the argument.

At a section 366.26 hearing, the juvenile court determines a permanent plan of care for a dependent child.  (*In re Celine R.* (2003) 31 Cal.4th 45, 52-53; *In re Casey D.* (1999) 70 Cal.App.4th 38, 50.)  Adoption is the permanent plan preferred by the Legislature.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)  "'Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered.' [Citation.]" (*Id.* at p. 574.)

"Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)."  (*In re S.B.* (2008) 164 Cal.App.4th 289, 297.)  In this case, Mother testified regarding her relationship with her children, which we summarized above.  The testimony suggests she was invoking the beneficial parental relationship exception.**10**

---

**10** Mother did not actually assert or argue that the beneficial parental relationship exception applied.  At the section 366.26 hearing, Mother's counsel stated that Mother "would like to testify as to the parent-child bond."  After Mother's testimony, her counsel

*[footnote continued on next page]*

The beneficial parental relationship exception applies when there is "a compelling reason for determining that termination would be detrimental to the child" because the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) To prove the existence of a beneficial parental relationship, the "parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant. [Citation.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) The parent must show that the "relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H., supra,* 27 Cal.App.4th at p. 575.)

Mother's testimony, summarized above, indicates that she had a parental role in caring for J. on a daily basis until the child was removed at the age of 11 months and that

---

*[footnote continued from previous page]*
offered no argument whatsoever. However, CFS does not contend that Mother has forfeited this argument by failing to raise it below and we have elected to address the issue on the merits.

J. recognized Mother as her mother.  After removal, Mother had supervised visits with J. once each month.  According to the social worker, Mother was appropriate and showed affection during visits.  However, her affection was generally not reciprocated, and the children did not appear to be distressed about leaving the parents when visits were complete.  Based on such evidence, the juvenile court could reasonably conclude that any benefits to J. from maintaining the relationship between her and Mother were outweighed by the well-being the child would receive under adoption.

The evidence of a parent-child bond is even weaker as to R.  R. was removed from Mother's custody when he was less than two weeks old.  Thereafter, Mother had no substantial parental role in his life.  During visits, Mother generally played with J. while Father held R.  There is, in short, no substantial evidence to support Mother's assertion of the beneficial parental relationship exception to adoption as to R.

## IV.  DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

27