[No. B230068. Second Dist., Div. Eight. July 18, 2011.]

In re T.W. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
H.W., Defendant and Appellant.

COUNSEL

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and O. Raquel Ramirez, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

GRIMES, J.—

## SUMMARY

A mother appeals from an order terminating parental rights to two of her 11 children, T.W. and S.W., who were ages two and a half years and six months, respectively, when they were detained in September 2009. (Most of the other children, born both before and after T.W. and S.W., have moved, or are moving through the dependency system to homes other than with the mother, who has "an unresolved history" of illicit drug abuse.) Her appeal does not assert that the order terminating parental rights was improper. She makes no claim that the children were not adoptable, or that she has maintained regular visitation (she has not), or that the children would benefit from continuing the relationship. Instead, she contends that she is entitled to challenge the court's December 28, 2009 disposition order, which denied her reunification services based upon her failure to reunify with the children's older siblings.

Ordinarily, the mother could not challenge that order unless she had filed a writ petition after the order was entered (which she did not do). But mother contends that, because the court clerk mailed the written advisement of her writ petition rights to her correct address, but without including the ZIP Code (and she received no oral advisement because she did not attend the hearing), she "was not advised of her right to challenge the trial court's orders . . . ." Further, mother claims, the jurisdictional order was erroneous because no substantial evidence supported the conclusion that the children were at risk of suffering serious physical harm or illness if left in her care, and no substantial evidence supported the order denying her reunification services.

We dismiss the appeal for the reasons set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

T.W. and S.W. were detained in September 2009, after an incident of spousal abuse by their father. Mother called the police; father was arrested and later imprisoned. Mother had a long history of drug use and both parents had a history of arrests and convictions for various crimes. Six of mother's older children had been in the dependency system in the past; two of them had been adopted, and the other four were placed with their father or grandparents. In 2007, T.W. had been detained because of mother's substance abuse, but mother had successfully reunified with him, and the court terminated jurisdiction in October 2008.[1]

During the Los Angeles County Department of Children and Family Services's (Department) 2009 investigation, mother admitted she had recently relapsed and used methamphetamine. But T.W. and S.W. were well groomed and healthy; mother was very attentive, watchful and loving to them, was motivated to create a better future for them, and agreed to substance abuse treatment, domestic violence counseling and individual counseling. So, despite her admission of recent drug use, the children were released to their mother and they lived at a sober living home, with mother required to undergo random drug testing. (The children were detained from the father, who was convicted of assault and spousal abuse and was sentenced to five years in state prison.)

The Department's jurisdictional report noted the investigator's "grave concerns about mother's ability to cope in times of day to day stress"; mother's "skirt[ing] around all questions when it comes to the use of prescription medications"; and "too many unanswered questions about all the prescribed medications that she was taking." The report further stated that mother had "repeatedly told the Department that she will not check into an inpatient program and that she prefers to leave the sober living house and get her own apartment . . . . The mother has also resisted entering into treatment with any of the referred treatment providers mentioned" during a team decisionmaking meeting with mother held on September 17, 2009. (Underscoring omitted.)

Two and a half months after the children were detained from the father, they were removed from their mother's care because of general neglect due to substance use; mother tested positive for cocaine, opiates and benzodiazepines and admitted having used "a little coke and meth." But mother was

---

[1] T.W. was declared a dependent child of the court in November 2007, with the juvenile court finding that mother had a 17-year history of substance abuse, was a current abuser of cocaine and alcohol, had used illicit drugs in the child's home and was under the influence of illicit drugs while the child was in her care. In addition, the court found that three siblings had received permanent placement services due to mother's substance abuse.

"well bonded with both children," had been attentive to the children's medical needs during the preceding two months, and the children appeared healthy and well fed. During that period, mother had been attending a treatment program that she had begun in 2006 (in connection with a DUI [driving under the influence] charge), as well as an outpatient program that included drug education and individual counseling (where she was "doing the minimum" of two group and one individual sessions weekly, but she had not attended between October 30th and November 16th). Her counselor believed she needed a residential treatment program.

The Department concluded that mother's "continued failure to comply with recommended treatment, failure to submit to random and on-demand drug tests, and use of cocaine, methamphetamines and opiates places the children . . . at risk," noting that "mother was adamant that she did not require inpatient and refused to participate in the [D]rug Court program." The Department recommended that no reunification services be offered.[2]

On December 8, 2009, the juvenile court took jurisdiction over the children, sustaining the allegations that mother had an unresolved history of illicit drug abuse, including cocaine and amphetamine, and was a current user of methamphetamine, rendering her incapable of providing regular care for the children; that three siblings received permanent placement services due to mother's illicit drug use; that T.W. was a prior dependent of the court due to mother's illicit drug use; and that her abuse of illicit drugs placed the children at risk of physical and emotional harm and damage. During the month of December, mother failed to appear for two random drug tests, and the children were placed with their paternal grandparents, who wanted to adopt them.

The disposition hearing occurred on December 28, 2009. Mother was not present. The juvenile court declared the children dependents of the court, ordered no reunification services (Welf. & Inst. Code, § 361.5, subd. (b)(10)),[3] and set the matter for a hearing on a permanent plan for the children. The court observed: "[T]hese are children 7 and 8 on the case. As the court knows, mother did reunify ultimately with [T.W.], but [T.W.] is once again before the court. In reading the report, mother has yet to consistently get herself in treatment and comply with the case plan and the court notes that based upon mother's performance and mother's performance as indicated by the reports in here, the court does not find it's in the best interest of these children to accord family reunification services to them."

---

[2] The Department indicated it had "grave concerns regarding the mother's inability to keep herself clean and sober demonstrated over the last several years which resulted in the termination of reunification services and termination of her parental rights and/or permanent placement services for at least 5 of her older children."

[3] All statutory references are to the Welfare and Institutions Code.

The court directed the clerk of the court "to forward written advisement to parties not present that to preserve any right to review on appeal of the court's order setting the hearing to select and implement a permanent [plan] under [section] 366.26, the party must seek an extraordinary writ by filing a notice of intent to file a writ petition . . . ." The clerk of the court mailed a notice of the extraordinary writ requirements to mother's last known address, but the clerk's certificate of mailing did not include the ZIP Code.

After the December 2009 disposition hearing, mother visited the children in January, but missed most of her scheduled twice-weekly visits in February and March. The Department modified the visitation plan to bimonthly visits, but as of April 15th, mother had visited only three times since the end of December. A report by the social worker in April stated that "[i]t has also been reported that the mother is currently in a domestic violence relationship with her current partner and was recently assaulted." The report also stated that in April a Los Angeles County housing department employee called the child protection hotline and indicated that mother "appeared to be under the influence of a substance when he went to inspect her home." Mother visited the children once in April, once in July, and once in August.

In August 2010, mother was arrested on various charges, including possession of methamphetamine and narcotics paraphernalia, and spent some time in jail. She was arrested again in September. She visited the children on October 6th, and appeared jittery; she refused to test, saying that she had "used" two days earlier.

The hearing on the permanent plan for the children, originally scheduled for April 26, 2010, was continued a number of times and eventually was held on November 2, 2010. That hearing also included the court's adjudication of a petition concerning mother's two additional children, twins born in June; the court sustained allegations (among others) that mother had a positive toxicology for amphetamines and opiates on the birth of the twins.

Mother was not present at the permanency planning hearing. Finding the children were adoptable and no statutory exception applied, the court terminated parental rights.

Mother appealed from the termination order.

## DISCUSSION

Along with its respondent's brief, the Department filed a motion to dismiss mother's appeal on the ground she failed to file a timely notice and petition for an extraordinary writ when the court entered its dispositional order on

December 28, 2009 (the same order that denied reunification services and set the matter for a permanency planning hearing under § 366.26). Mother says she was not advised of her right to challenge the trial court's orders setting the section 366.26 hearing, and therefore can raise those issues in this appeal. We disagree. The relevant law is as follows.

The first appealable order in a dependency case is the dispositional order. The jurisdictional order is not appealable; a challenge to the jurisdictional findings must be raised in an appeal from the dispositional order. (*In re Athena P.* (2002) 103 Cal.App.4th 617, 624 [127 Cal.Rptr.2d 46] (*Athena P.*).) "Failure to appeal from an appealable dispositional order waives any substantive challenge to the jurisdictional findings." (*Ibid.*)

In this case, the dispositional order also denied reunification services and set a section 366.26 hearing (often called the referral order or the setting order). When that occurs, " 'the traditional rule favoring the appealability of dispositional orders yields to the statutory mandate for expedited review.' " (*Athena P., supra*, 103 Cal.App.4th at pp. 624–625.) Consequently, the dispositional order here was not appealable and "could be reviewed, if at all, only by way of a writ petition." (*Id.* at p. 625.) And "failure to take a writ from a nonappealable dispositional order waives any challenge to it." (*Ibid.*; see § 366.26, subd. (*l*)(1), (2).)

One exception exists to this rule. "The juvenile court is required to advise a parent of the writ petition requirement.[4] [Citations.] If it fails to do so, in most cases the parent has good cause to be relieved of the requirement. Thus, even though the parent failed to file a writ petition, he or she can still challenge, on appeal, the order setting a section 366.26 hearing." (*Athena P., supra*, 103 Cal.App.4th at p. 625, citing cases.)

Mother here did not attend the hearing, so the court directed the clerk to forward the necessary written advisement to her. The clerk did so, but the certificate of mailing shows the clerk did not include the ZIP Code for mother's address. Mother contends the failure to include a ZIP Code excuses her from filing a petition for extraordinary writ and entitles her to challenge the merits of the findings and orders on which the referral order was predicated.

---

[4] Section 366.26, subdivision (*l*)(3) states: "The Judicial Council shall adopt rules of court, effective January 1, 1995, to ensure all of the following: [¶] (A) A trial court, after issuance of an order directing a hearing pursuant to this section be held, shall advise all parties of the requirement of filing a petition for extraordinary writ review as set forth in this subdivision in order to preserve any right to appeal in these issues. This notice shall be made orally to a party if the party is present at the time of the making of the order or by first-class mail by the clerk of the court to the last known address of a party not present at the time of the making of the order." (§ 366.26, subd. (*l*)(3)(A).)

In the circumstances of this case, we disagree with mother, and conclude she did not have "good cause to be relieved of the [writ] requirement." (*Athena P., supra*, 103 Cal.App.4th at p. 625.) Mother's address to which the written advisement was sent was correct; it simply contained no ZIP Code. It was not returned to the sender, indicating that it was indeed received. Mother has offered no declaration stating that she did not receive the writ advisement, nor does her brief claim that she was not aware of the writ requirement. Her response to the Department's motion to dismiss does not state that she did not receive the advisement, but contends only that "an incomplete, and, therefore, incorrect address which failed to include the ZIP Code" is insufficient to show proper notice. The inference from these facts is that mother in fact received notice as mailed. Further, mother made no attempt to take an appeal from the referral order. (See *Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 259–260 [71 Cal.Rptr.3d 293] [transcript showed court did not advise mother of the writ requirement; court found "good cause exists for mother's failure to file a timely writ petition from the setting order" and construed mother's purported appeal from the setting order as a petition for writ of mandate].) Mother's attorney was present at the hearing, heard the oral advisement and was served with the written advisement. Under these circumstances, we see no good cause to allow mother to contest the referral order at this late date.

■ Further, in the published cases that have permitted a parent to challenge the merits of a referral order after failing to take a writ, it is clear that the court in fact failed to give the oral advisement (when the parent was present) or that the written advisement (when the parent was not present) was not sent to or received by the parent. (See *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1110 [70 Cal.Rptr.3d 583] ["[mother] contends, the Department concedes, and we agree that, because she did not receive notice of her right to file a writ petition challenging the dependency court's termination of reunification services, [mother] may challenge that order on this appeal"]; *Athena P., supra*, 103 Cal.App.4th at pp. 623, 625 [the mother did not attend dispositional hearing at which setting order was made and the clerk failed to give her mailed notice of the writ petition requirement; "[t]he Department concedes that, as a result, [the mother] is free to challenge the dispositional order"]; *In re Maria S.* (2000) 82 Cal.App.4th 1032, 1038 [98 Cal.Rptr.2d 655] ["respondent concedes . . . that the court failed to advise appellant of her right to writ review to challenge termination of reunification services and setting of the section 366.26 hearing" so claims of error concerning reunification services were cognizable on appeal from the order terminating parental rights]; *In re Rashad B.* (1999) 76 Cal.App.4th 442, 448–450 [90 Cal.Rptr.2d 462] [juvenile court erroneously failed to ascertain mother's permanent mailing address at inception of the dependency, and mother later told social worker she was homeless; "the failure of the court and [the agency] to have

an address to which [writ petition] notice could be sent was attributable to an error by the court," excusing mother from her failure to file a writ petition]; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 722–723 [80 Cal.Rptr.2d 480] [court "agree[d] with the mother that she has shown good cause for her failure to file . . . a writ petition"; juvenile court, "through no fault of the mother, failed to discharge its duty to give her timely, correct notice"; notice (which was returned to sender and not remailed) was mailed untimely and with material defects, and mother maintained she never received it and was not aware of her right to seek writ review]; see also *In re Frank R.* (2011) 192 Cal.App.4th 532, 539 [121 Cal.Rptr.3d 348] [juvenile court "never notified father of his writ rights"].)

Mother insists that two cases show the clerk's failure to include a ZIP Code "is not a harmless error." Both cases involve failure to provide notice of dependency proceedings to an Indian tribe as required by the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). In *In re Alice M.* (2008) 161 Cal.App.4th 1189 [74 Cal.Rptr.3d 863], the ICWA notice to one tribe was not addressed to the tribal chairperson (as required by statute), and in addition, it was sent to " 'Route 1, Box 121' " in Apache, Oklahoma, instead of to " 'Route 2, Box 121, Apache, Oklahoma 73006,' " and the record contained "no verification that notice actually reached" the tribe. (*Alice M.*, at p. 1201.) Similarly, in *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779 [53 Cal.Rptr.3d 251], the ICWA notice was sent to the tribe at a post office box in Park Hill, Oklahoma, rather than in Tahlequah, Oklahoma; the error was not harmless because there was no conclusive evidence the tribe received actual notice of the proceedings. (*Nicole K.*, at pp. 783–784.) We are also aware of cases holding that, in the absence of proof that notice was actually received, a notice addressed to a post office with the wrong ZIP Code "invalidates what would have otherwise been sufficient notice." (*Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 288–289 [47 Cal.Rptr.3d 602] [notice of an order setting aside a default judgment was sent to the correct post office box but with the wrong ZIP Code; because plaintiff was not properly served with notice of the order, his appeal within 180 days of judgment was timely].)

██ None of these cases presents circumstances comparable to those here, and all of them involve notices sent to the wrong address. Here, the address was correct, and the worst that might reasonably be expected is a delay in delivery. Where mother does not state, either by declaration or otherwise, that she was unaware of the requirement to file a writ in order to preserve any right to appeal issues presented by the setting order, we find no legitimate basis for concluding she did not receive the written notice of the writ requirement. Accordingly, she may not raise those issues now.

Because mother does not otherwise challenge the order terminating parental rights, the Department's motion to dismiss her appeal is granted.[5]

## DISPOSITION

The appeal is dismissed.

Bigelow, P. J., and Rubin, J., concurred.

On July 18, 2011, the opinion was modified to read as printed above.

---

[5] The Department also filed a motion requesting judicial notice of a dependency petition and various juvenile court orders entered between June 2010 and April 2011 concerning the twins who were born to mother during these proceedings, including orders removing them from mother's custody, denying reunifications services and terminating mother's parental rights. Alternatively, the Department asks this court to receive postjudgment evidence in the form of those minute orders. We deny the Department's motion.