Filed 4/17/14  In re Natalie C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re NATALIE C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,      Plaintiff and Respondent,          v. SEAN C.,      Defendant and Appellant. | G049159 (Super. Ct. No. DP023887) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

\*          \*          \*

Sean C., presumed father of Natalie C., appeals from an order of the juvenile court dated October 2, 2013, denying him reunification services. However, he does not challenge that order directly, arguing instead that it was the product of earlier court errors, including the courts failures to: (1) accord him standing to contest jurisdiction, either because he was entitled to it at the original jurisdictional hearing, or because he attained that right following his elevation to the status of presumed father; and (2) consider placing Natalie in his custody. We are unpersuaded.

As a mere *alleged* father of Natalie when the court conducted its combined jurisdiction and disposition hearing, Sean did not qualify as a legal "parent." Consequently, he did not have standing to contest jurisdiction at that time. Moreover, his express affirmation of the proposed findings and orders adopted by the court at that hearing operated as a waiver of any that claim the court erred by doing so. And finally, as pointed out by respondent Orange County Social Services Agency (SSA), Sean's right to challenge the court's handling of the combined jurisdiction and disposition hearing was waived by his failure to appeal directly from the judgment entered after disposition.

Additionally, Sean's suggestion that he somehow attained the right to a *new* contested jurisdictional hearing, as a result of being named Natalie's presumed father, fails because there is only one jurisdictional hearing in a dependency case. The purpose of the hearing is to establish the court's dependency jurisdiction over *the child*, not the parent or any other party, and it is required to be held a short time after the petition is filed. Thus, the issue of jurisdiction is decided only once, at the outset of the case, without regard to whether all potentially interested parties are available to participate or have established their relationship to the child at that point. To the extent the emergence of a dependent child's presumed father at some later point constitutes a material change in circumstance, it might afford a basis for a motion seeking a change in the order under Welfare and Institutions Code section 388 (all

2

further statutory references are to this code). It does not, however, trigger any right to a separate jurisdictional hearing relating specifically to the interests of the presumed father.

Sean's assertion that the court also erred by failing to consider placing Natalie in his custody as required by section 361.2, before ordering that reunification services be denied to him, fails for much the same reasons as his jurisdictional claim. Section 361.2 comes into play at the dispositional hearing, which in this case was combined with the jurisdictional hearing. Because Sean was only an *alleged* father at that time, and thus not a legal "parent," he had no right to be considered for preferential custody under section 361.2. Moreover, Sean's affirmative endorsement of the proposed dispositional order placing Natalie in the custody of SSA operated as a waiver of any claim that the court erred by issuing such an order. And finally, Sean's failure to appeal directly from the judgment entered following disposition precludes him from raising the claim of error by way of appeal from a subsequent order.

The order denying reunification services to Sean is affirmed.

FACTS

Natalie was born prematurely in May 2013, weighing only 3.34 pounds, after her mother's placenta ruptured. At the hospital, Natalie's mother tested positive for the active ingredient in marijuana, and she acknowledged smoking marijuana throughout her pregnancy. She also admitted "relaps[ing]" and using methamphetamine four days prior to Natalie's birth. Mother identified Sean as her boyfriend, and explained her relapse had resulted from her depression following his incarceration.

3

Mother also initially identified Sean as Natalie's biological father, although maternal relatives informed SSA that she was legally married to another man, Russell, who lived out of state. Both mother and Sean had criminal histories involving drug-related charges, and Sean was incarcerated at the time of Natalie's birth with an unknown release date.

Following Natalie's birth, she was placed in the hospital's neonatal intensive care unit where it was estimated she would remain for 4 to 6 weeks.

SSA filed the jurisdictional petition on June 13, 2013, claiming dependency court jurisdiction over Natalie was proper based upon a single count of failure to protect (§ 300, subd. (b).) The petition alleged that: (1) mother used marijuana and methamphetamine during her pregnancy and failed to obtain regular prenatal care; (2) mother has an unresolved substance abuse problem; (3) mother has a criminal history which includes drug-related charges; (4) mother is an Australian national who is in the United States illegally and is subject to deportation; (5) mother has two other children who are not in her custody; (6) mother may have a history of mental health issues; (6) mother has a history of being transient and homeless; (7) alleged father (Sean) has a criminal history which includes arrests or convictions for contributing to the delinquency of a minor, arson, receiving stolen property, possession of a bad check and possession of marijuana while driving; and (8) alleged father (Sean) is currently incarcerated, has not provided for the safety and protection of the child and is unable to provide for the child's care.

The court promptly appointed counsel to represent Sean, and Sean was present, in custody, at the initial detention hearing. Sean's counsel informed the court that Sean was requesting a paternity test to confirm he was the biological father, and that in the event the test established he was, Sean believed his own mother would be willing and able to assume care of Natalie. The court granted the request for a

4

paternity test, ordered Natalie detained temporarily, and continued the hearing for one day so that mother could be present.

At the continued detention hearing, mother was present – having just been taken into custody – and Sean was again present, in custody. However, another man, Joshua, also appeared and informed the court that he might be Natalie's biological father. Mother confirmed that both Sean and Joshua were possible biological fathers. She denied that her former husband (she claimed they were divorced) was a possible biological father. At Joshua's request, the court also appointed counsel to represent him. His counsel also requested a paternity test, which the court ordered.

Sean's counsel informed the court that although Sean had believed himself to be the biological father, "that would now be in doubt." Counsel also affirmed that Sean had not done any of the things that would entitle him to the status of Natalie's presumed father.

All parties, including Sean, submitted on the issue of detention and the court ordered Natalie detained. The court denied visitation to both Sean and Joshua, but stated that if either of them were found to be Natalie's biological father, he would be allowed monitored visitation subject to limitations if in custody. Because mother did not waive the statutory time limitation for holding the jurisdictional hearing (see § 334), the court set a combined jurisdiction and disposition hearing for July 8, 2013.

All parties, including both alleged fathers, appeared at the combined jurisdictional and dispositional hearing. Mother signed a waiver of her constitutional rights, including the rights to trial, to confront and cross-examine witnesses, to subpoena witnesses and to avoid self-incrimination. Mother also informed the court she wished to submit the petition on the basis of SSA's report. Before accepting that submission, the court confirmed that mother intended to waive her constitutional rights.

Neither of the alleged fathers signed a waiver of rights, but both agreed to the proposed orders and findings relating to jurisdiction and disposition – including a proposed finding that the allegations of the petition were true by a preponderance of the evidence, bringing Natalie within the provisions of section 300, subdivision (b), and a proposed disposition that ordered Natalie removed from parental custody and placed in the custody of SSA. Moreover, in signing that agreement, Sean's attorney specifically added the language "submit on report."

In accordance with the parties' proposal, the court found the allegations of the petition to be true and adjudicated Natalie a dependent. As to disposition, the court ordered Natalie's custody to be vested with SSA for appropriate placement, ordered all parties to return to court on September 10 for a case plan review and paternity review hearing, and to return again in January 2014 for a six-month review hearing.

At the September 10 hearing, the parties reported to the court that paternity testing had revealed Sean to be Natalie's biological father. Sean's counsel explained, somewhat confusingly, that he "had submitted a waiver of rights on behalf of [Sean] according to the orders that were adopted back on July 8th, 2013, and at that time . . . [Sean] submitted or admitted or pled no contest in respect to the petition. [¶] For that reason I was submitting a waiver of rights on behalf of [Sean] because he is now the biological father. Initially he was merely alleged father. I understand that the court is not accepting that waiver, but I just want to put on the record I believe [Sean] has not had any opportunity to contest the allegations or to answer or argue those allegations contained in the petition." The court indicated that with respect to the jurisdictional hearing, "the train has already left the station," and inquired whether mother and Sean wished to execute a declaration of paternity. They both responded in the affirmative, and the court then declared Sean to be Natalie's presumed father. Sean's counsel reminded the court that Sean's mother had been interested in having Natalie placed

6

with her "contingent upon [Sean] being the biological father," but did not make any specific request with respect to that point.

The court continued the case for a "case plan review now that [Sean's] been found presumed." In connection with that continued hearing, SSA filed an addendum report recommending that no reunification services be offered to Sean, on the basis he was incarcerated, was expected to remain incarcerated for a significant period of time, and the provision of such services would be detrimental to Natalie. (§ 361.5, subd. (e)(1).) The case plan review hearing took place on October 2, 2013. At the hearing, Sean's counsel argued there was no clear and convincing evidence demonstrating that services should be denied to Sean under that subdivision. SSA argued otherwise, while also pointing out that Sean's relatives "are going to be requesting placement of the child, so it may be a circumstance that the child may be in the family, so [Sean] should avail himself of the services available while he is incarcerated." The court then adopted SSA's proposed findings and ruled that reunification services need not be provided to Sean.

*1. The Claimed Right to a Contested Jurisdictional Hearing.*

Sean's first argument is that, as Natalie's presumed father, he is entitled to a contested jurisdictional hearing. Although not entirely clear, it appears Sean's argument encompasses both a claim that he was improperly deprived of his right to participate at the original jurisdictional hearing, and a claim that he became entitled to a new jurisdictional hearing after his status was elevated to presumed father. Neither assertion is correct.

There is only one jurisdictional determination in a dependency matter, and the only issue to be determined is whether the court will take jurisdiction *over the child*. (§ 300.) As explained in *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202, "[d]ependency proceedings are civil in nature and are designed to protect the child,

7

not to punish the parent. [Citation.] Therefore, the court takes jurisdiction over children [citation]; it does not take jurisdiction over parents. Moreover, the court has jurisdiction over the children if the actions of either parent bring the child within one of the statutory definitions in section 300." Further, the jurisdictional hearing is *required* to be held within a short period of time after the petition is filed. Section 334 specifies that "[u]pon the filing of the petition, the clerk of the juvenile court shall set the same for hearing within 30 days, except that in the case of a minor detained in custody at the time of the filing of the petition, the petition must be set for hearing within 15 judicial days from the date of the order of the court directing such detention."

Obviously, when the court holds the jurisdictional hearing, it must conduct its assessment in light of the circumstances and evidence existing at the time of the hearing. Here, a significant existing circumstance was that Sean was merely one of two *alleged* fathers of Natalie – a status that provided him only limited rights. "Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. [Citation.] An alleged father does not have a current interest in a child because his paternity has not yet been established. [Citation.] Therefore, he is not a 'parent' within the meaning of section 317." (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1406.)

Sean's claim that he nonetheless had "standing to participate" in the jurisdictional hearing because his status was closer to that of the de facto parents in *In re B.G.* (1972) 11 Cal.3d 679, than that of the alleged father in *In re Christopher M.* (2003) 113 Cal.App.4th 155, is unpersuasive. In essence, Sean is arguing he occupied what amounts to an *enhanced* alleged father status, because he "claimed he was the father, mother agreed he was the father, and there was a paternity test pending to confirm that he was the father." He contends those facts demonstrate that "like the de facto parents [in *In re B.G.*], [he] had thrown his hat into the ring." But the record

8

does not support his argument. As of the initial *detention* hearing, Sean may have believed himself to be Natalie's father, and mother apparently supported that belief. But even then, Sean was requesting his paternity be confirmed via testing before committing to anything. And by the time of the jurisdictional hearing, there was a second candidate whom mother admitted also might be Natalie's biological father. As a result of that revelation, Sean's counsel explicitly acknowledged the issue of his paternity was in significant doubt and confirmed that Sean would be awaiting the results of the paternity testing before throwing *his* hat *anywhere*. These facts reflect a much different scenario than the one claimed by Sean.

Because Sean was just an alleged father at the time of Natalie's jurisdictional hearing, he was entitled to only limited rights in connection with that hearing – notice and an opportunity to establish his paternity. (*In re O.S., supra,* 102 Cal.App.4th. at p. 1408 ["An alleged father in dependency proceedings is entitled to notice, because notice provides him *an opportunity to appear and assert a position and attempt to change his paternity status*" (italics added)].) And in this case, there is no question but that Sean had been given notice of this proceeding at the outset and was promptly afforded the opportunity to elevate his paternity status. As of the date the jurisdictional hearing was required to be held, he had not yet achieved that elevation, and thus had no additional right to contest the issue of jurisdiction.

In any event, we note that at the original jurisdictional hearing, Sean affirmatively *agreed to* the very jurisdictional finding he now claims the right to challenge. The "proposed orders and findings" signed off on by all parties in attendance, including Sean, incorporate a finding that the allegations of the petition – including those relating specifically to Sean – are true by a preponderance of the evidence, as well as a finding that the welfare of the child requires that custody be taken from the parents. Sean was not required to affirmatively agree to any proposed findings at the jurisdictional hearing, and thus his decision to do so voluntarily is

inconsistent with his present claim that had the court afforded him the right to a contested trial, he would have chosen to exercise that right. Thus, even if we believed the court somehow erred by failing to treat Sean as though he already occupied the status of presumed father at the jurisdictional hearing (which we do not), we would have no choice but to deem that error harmless. (See *In re Monique T.* (1992) 2 Cal.App.4th 1372, 1377.)

And finally, even if the court had committed prejudicial error in its handling of the jurisdictional hearing, we would find Sean waived that claim on appeal. The court combined the jurisdiction and disposition hearing in this case, and the result of that hearing was an appealable order. "The first appealable order in a dependency case is the dispositional order. . . . [A] challenge to the jurisdictional findings must be raised in an appeal from the dispositional order." (*In re T.W.* (2011) 197 Cal.App.4th 723, 729; *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112 [propriety of jurisdictional findings is reviewable on appeal from the judgment following disposition].) If Sean wished to challenge the court's jurisdictional ruling, he was required to do so in an appeal from that dispositional order. "Failure to appeal from an appealable dispositional order waives any substantive challenge to the jurisdictional findings." (*In re Athena P.* (2002) 103 Cal.App.4th 617, 624.)

As for Sean's suggestion that he *became* entitled to a contested jurisdictional hearing only after his elevation to presumed father status, it likewise fails. Sean offers no authority suggesting his new status could either retroactively alter what *should have occurred* at the original jurisdictional hearing, or automatically trigger some new right to contest jurisdiction outside the statutorily mandated timeframe for making that determination. Instead, as SSA points out, if Sean believes his elevation to presumed father status should materially change the court's analysis of jurisdiction, his remedy is to seek a modification of that order in accordance with the requirements of section 388. (See *In re H.S.* (2010) 188 Cal.App.4th 103 [appeal

10

from denial of section 388 petition seeking modification of jurisdictional order].) There is no indication he has pursued that option.

*2. The Claimed Failure to Consider Placing Natalie in Sean's Custody.*

Sean also contends the court's order bypassing reunification services for him must be reversed because the court erred by failing to first consider placing Natalie in his care pursuant to section 361.2. We reject the contention. Section 361.2 comes into play at the dispositional hearing, when the court "'must decide where the child will live while under the court's supervision.'" (*In re A.S.* (2011) 202 Cal.App.4th 237, 247.) It provides that "[w]hen a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." (§ 361.2, subd. (a).) Sean points out that a parent's incarceration is not a barrier to such custodial consideration, as the incarcerated parent is still entitled to make appropriate arrangements for the child's care. (*In re V. F.* (2007) 157 Cal.App.4th 962, 971, superseded on other grounds as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57-58; *In re Isayah C.* (2004) 118 Cal.App.4th 684, 700.)

But this second claim of error is flawed for all the same reasons that plagued Sean's contention that he was improperly denied a contested jurisdictional hearing: First, the court's order removing Natalie from parental custody was made at the combined jurisdiction and disposition hearing in July 2013, when the court adopted the parties' proposed findings and orders, including an order that custody of Natalie be vested in SSA. Again Sean affirmatively *joined* in the proposal that these findings and orders be made, thereby waiving any claim the court should have done something different.

11

Second, because Sean was merely an alleged father at the time of that hearing, and thus not a legal "parent," there was no basis for the court to consider placing Natalie in his custody under section 361.2, and thus the court cannot have erred by failing to do so.

Third, the court's dispositional order was directly appealable (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1250 ["'[i]n a section 300 proceeding, the order entered at the dispositional hearing is a final judgment'"]), and therefore even if the court had erred, Sean waived his right to challenge it on appeal by failing to file a direct appeal from that order. Both *In re V.F., supra*, 157 Cal.App.4th 962, and *In re Isayah C., supra,* 118 Cal.App.4th 684, the cases Sean relies upon to establish the court's obligation to consider placement under section 361.2 before denying services, involve direct appeals from the dispositional order.

And finally, Sean's subsequent establishment of presumed father status did not reanimate the already completed dispositional hearing. Although Sean attempts to characterize the October 2013 status review hearing at which the court denied him reunification services, as his own "dispositional hearing," it was not. The dispositional hearing took place in July 2013, and resulted in an appealable order placing Natalie in the custody of SSA. To the extent that Sean's presumed father status provides a sufficient change in circumstances to warrant a modification of that dispositional order, his remedy is to seek relief pursuant to section 388. (See *In re Mickel O.* (2011) 197 Cal.App.4th 586.)

12

DISPOSITION

The order denying reunification services to Sean is affirmed.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.