Filed 6/21/16  In re L.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.B. et al, Persons Coming Under the Juvenile Court Law. | H043175 (Monterey County Super. Ct. Nos. J47890, J47892, J47893) |
| MONTEREY COUNTY DEPARTMENT OF SOCIAL & EMPLOYMENT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.B., <br><br> Defendant and Appellant. | |

## I.    INTRODUCTION

A.B. is the father of L.B., B.B., and A.B. IV, the children at issue in this juvenile dependency proceeding.  The father appeals from the juvenile court's orders at a Welfare and Institutions Code section 366.26[1] selection and implementation hearing, although he challenges visitation orders that were made earlier in the case.  For reasons that we will explain, we will affirm the juvenile court's orders.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## II.    BACKGROUND

### A.    *Section 300 Petitions and Detention Hearing*

On June 23, 2014, the Monterey County Department of Social and Employment Services (the Department) filed petitions alleging that the children fell within the dependency jurisdiction of the juvenile court under section 300, subdivisions (a) [serious physical harm] and (b) [failure to protect].  At the time, L.B. was 13 years old, B.B. was three years old, and A.B. IV was two years old.  The petitions alleged the following.

The mother[2] had two other children:  C.R., then 17 years old, and G.T., then nine years old; both lived with the mother and the father.  There had been five prior referrals as to the family, involving the mother's drug use and neglect of the children.  The mother had tested positive for various substances following the birth of B.B. in 2011.

The incident leading to the petitions had occurred on June 12, 2014.  On that date, the father had beaten C.R. with a cord, leaving bruises on her legs.  The mother had been present but had done nothing to protect C.R., who had reported that she was regularly "disciplined" in the same manner and that there was domestic violence between the mother and the father.  C.R. further reported that the father would hit L.B. and G.T. as well as the mother, and that he would put the younger children's heads into pillows when they cried.  L.B. had bruises on her leg and reported that they were the result of the father hitting her with "the cord."

Both parents had been arrested, and the children had been placed into protective custody.  At the detention hearing held on June 24, 2014, the juvenile court found that continuance in the parental home would be contrary to the children's welfare and that removal from the parents' custody was necessary to protect the children's physical or emotional health.  The court determined that a prima facie showing had been made that

---

[2] The mother shares the same initials (L.B.) with one of the children.  All references to L.B. are to the child.

the children came within section 300, and it ordered the children detained. The juvenile court ordered drug testing for both the mother and the father and authorized the Department to order a psychological evaluation of the father.

### B.        *Jurisdiction/Disposition Report and Hearing*

The Department filed a jurisdiction/disposition report on July 31, 2014. At the time, the children were placed with their maternal grandparents, which was a concurrent home. Both parents had been charged with inflicting corporal injury on a child, and the father had been charged with two firearm offenses.

The Department recommended the juvenile court order reunification services for the mother and the father, but that the father be provided visitation as to B.B. and A.B. IV only. The mother and father had been visiting with B.B. and A.B. IV. However, L.B. had informed the Department that she was afraid of the father and that she did not want to visit with him, and the Department recommended the juvenile court find that such visitation would be detrimental to L.B.

On August 5, 2014, the mother and father both submitted on the Department's report, and the juvenile court adopted the Department's findings and recommendations. The juvenile court sustained the petitions, ordered the children's removal from the physical custody of the parents, and ordered reunification services for both parents but found that the father's visitation with L.B. would be detrimental to the child. The case plan required both parents to develop and demonstrate an understanding of their roles in the children's physical abuse and the effect of that abuse, to participate in a family assessment and follow any recommendations, to sign up for domestic violence counseling services, to attend and complete parent education classes, to attend and participate in an alcohol/drug assessment, and to participate in random drug testing.

The father was personally present at the hearing. Although the minute order states that "[a]ppeal rights" were given in court, the reporter's transcript does not reflect that the parties were advised of their appellate rights. The jurisdiction/disposition report,

3

however, did contain a section regarding the parents' appeal rights. The report stated that any party objecting to the juvenile court's decision had the right to appeal that decision, and it explained the procedure for appeals.

### C. Six-Month Review Report and Hearing

The Department filed a status review report on January 23, 2015, in advance of the six-month review hearing. The children remained placed with their maternal grandparents.

The Department recommended the juvenile court continue reunification services as to the mother but terminate reunification services as to the father, who was in prison serving at least a two-year term. The Department also recommended the juvenile court find that visitation with the father would be detrimental to the children.

On February 3, 2015, the mother and the father submitted on the Department's report, and the juvenile court adopted the Department's findings and recommendations, terminating the father's reunification services and finding that his visitation with the children would be detrimental. The father was not present at the six-month review hearing, but he was represented by counsel, who indicated he would write the father a letter "to let him know what happened today."

### D. 12-Month Review Report and Hearing

The Department filed a status review report on July 15, 2015, in advance of the 12-month review hearing. The Department recommended the juvenile court terminate the mother's reunification services and set the matter for a selection and implementation hearing.

The children remained placed with their maternal grandparents, and the father remained in prison. The mother had been out of contact with the Department and had not visited the children since May 2, 2015. The father had been writing letters to the children, but the Department believed that visitation with the father would be detrimental to the children due to his incarceration.

4

On August 4, 2015, the juvenile court adopted the Department's findings and recommendations, terminating the mother's reunification services, continuing the denial of visitation as to father, and setting a selection and implementation hearing for December 1, 2015. The father was not present at the 12-month review hearing, but he was represented by counsel, who informed the juvenile court that he would advise the father about what had happened at the hearing. The juvenile court noted that there was "a seven-day writ period," and the parties' writ and appellate rights were provided in an attachment to the juvenile court's orders.

### E.  The Father's Letter

The father submitted a hand-written letter to the juvenile court dated October 25, 2015. He described how he had been participating in classes and services at prison and asked the juvenile court to allow him to be a part of his children's lives. The father included copies of various certificates showing his participation in classes and services.

### F.  Section 366.26 Report and Hearing

The Department filed a section 366.26 report on November 16, 2015, in advance of the selection and implementation hearing. The Department recommended that the juvenile court order a guardianship for L.B., and approve adoption as the permanent plan for B.B. and A.B. IV.

The father remained incarcerated and the mother's whereabouts were unknown. The mother had recently been arrested and was facing a number of charges, including some related to controlled substances. The father continued to write letters to the children. The children remained together in the home of the maternal grandparents, who intended to become L.B.'s legal guardian and the adoptive parents of B.B. and A.B. IV.

On December 1, 2015, the juvenile court held an uncontested selection and implementation hearing. The father was present at the hearing, although he was in custody. Counsel for the father stated that he had been in regular contact with the father throughout the proceedings, and he reminded the juvenile court of the father's

5

participation in various programs. The father opposed the recommendation of adoption as to B.B. and A.B. IV, because he wanted to be "an active participant in their lives." The father was scheduled to be released from prison the following month.

The juvenile court adopted the findings and recommendations of the Department, ordering a guardianship for L.B. and approving adoption as the permanent plan for B.B. and A.B. IV. The father has appealed from those orders.

## III.   DISCUSSION

The father contends the juvenile court erred by denying him visitation with L.B. at the disposition hearing and by terminating his visitation with B.B. and A.B. IV at the six-month review hearing, because the record does not contain clear and convincing evidence that visitation would have been detrimental to the children. (See gen., *In re Mark L.* (2001) 94 Cal.App.4th 573, 580 ["It is ordinarily improper to deny visitation absent a showing of detriment."].) The father claims the juvenile court's erroneous visitation orders "stripped him of his due process rights to parent his children with minimal government interference" and left him "without a viable counter-argument" at the selection and implementation hearing, in that he was unable to show the "regular visitation and contact" necessary to establish the beneficial parent-child relationship to adoption. (See § 366.26, subd. (c)(1)(B)(i).)

However, as the father acknowledges, he did not seek timely appellate review of the disposition orders, nor of the orders terminating his reunification services at the six-month review hearing. The disposition order was appealable, as was the order terminating reunification services at the six-month review hearing. (See § 395, subd. (a)(1); *In re T.W.* (2011) 197 Cal.App.4th 723, 729; *Wanda B. v. Superior Court* (1996) 41 Cal.App.4th 1391, 1395-1396.) Generally, a party may not, through an appeal of the most recent dependency order, challenge a prior order for which the statutory time for a notice of appeal has expired. (*In re Liliana S.* (2004) 115 Cal.App.4th 585, 589

6

(*Liliana S.*); see also *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 ["an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order"].) "[This] rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders. [Citation.]" (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.)

The father acknowledges these general principles of appellate review, but he contends that under California Rules of Court, rule 5.590,[3] and *In re A.O.* (2015) 242 Cal.App.4th 145 (*A.O.*), his appellate challenges to the prior visitation orders are not barred, because he was not properly advised of his appellate rights after entry of those orders.

Rule 5.590(a) provides: "If at a contested hearing on an issue of fact or law the court finds that the child is described by Welfare and Institutions Code section 300, 601, or 602 or sustains a supplemental or subsequent petition, the court after making its disposition order . . . must advise, orally or in writing, the child, . . . and, *if present*, the parent or guardian of: [¶] (1) The right of the child, parent, and guardian to appeal from the court order if there is a right to appeal; [¶] (2) The necessary steps and time for taking an appeal; [¶] (3) The right of an indigent appellant to have counsel appointed by the reviewing court; and [¶] (4) The right of an indigent appellant to be provided with a free copy of the transcript." (Emphasis added.)

In *A.O.*, the mother appealed after the juvenile court terminated her reunification services at the 12-month review hearing. (*A.O.*, *supra*, 242 Cal.App.4th at p. 147.) The mother had not timely appealed after the jurisdiction/disposition hearing, when the juvenile court had ordered the child removed from her care. The mother argued that the appellate court should nevertheless reach the merits of her challenges to the jurisdictional

---

[3] All further rule references are to the California Rules of Court.

findings and disposition order, because the juvenile court had failed to advise her of her right to appeal at the conclusion of the jurisdiction/disposition hearing, as required by rule 5.590(a).  (*A.O.*, *supra,* at p. 147.)  The *A.O.* court agreed, finding that the failure to advise the mother of her appellate rights as required by rule 5.590(a) was "a ' "special circumstance[] constituting an excuse for failure to [timely appeal]." ' [Citation.]" (*A.O., supra,* at p. 149.)  The court rejected the agency's argument that rule 5.590(a) was inapplicable because the mother had submitted on the issue of reunification services at the jurisdiction/disposition hearing, noting that the mother had *not* submitted to the issues of jurisdiction or removal.  (*A.O., supra,* at p. 149.)

Recently, in *In re Albert A.* (2016) 243 Cal.App.4th 1220 (*Albert A.*), the same court that decided *A.O.* rejected a mother's claim that she was excused from timely appealing a disposition order due to a lack of notification of appellate rights.  In that case, the mother was not present at the time of the jurisdiction/disposition hearing.  (*Albert A., supra,* at pp. 1229-1230.)  The mother's attorney did not object to the submission of the agency's reports into evidence but did argue that the mother had not caused her children severe emotional damage and thus that the juvenile court should not sustain the allegations of the petitions.  (*Id.* at pp. 1229-1230.)  The mother did not appeal from the disposition orders, nor did she file a petition for extraordinary writ after the juvenile court terminated her reunification services at the six-month review hearing.  (*Id.* at pp. 1230, 1232.)

The *Albert A.* mother ultimately appealed from the juvenile court's orders at the section 366.26 hearing, challenging the juvenile court's jurisdictional findings and asserting that she did not waive the right to challenge those orders because the juvenile court had not advised her of her right to appeal at the time.  (*Albert A.*, *supra*, 243 Cal.App.4th at pp. 1234-1235.)  The agency argued that the mother was not entitled to notice of her right to appeal the disposition order because "(1) the jurisdiction hearing was not 'contested,' and (2) mother was not 'present' at the hearing."  (*Id.* at p. 1235.)

8

The *Albert A.* court rejected the agency's first argument, concluding that although the mother's counsel agreed to submit the case on the agency's reports and did not offer affirmative evidence, these actions did not constitute a waiver of appellate rights. (*Id.* at pp. 1235-1236.) But the court went on to hold that because the mother was not present at the jurisdiction hearing, she was not entitled to notice of her right to appeal, since under rule 5.590(a), the parent, " '*if present*,' " is entitled to written or oral notice of his or her right to appeal. (*Albert A., supra,* at p. 1236.)

In the instant case, the father was present for the jurisdiction/disposition hearing, at which the juvenile court denied visitation between the father and L.B. The minute order recites that "[a]ppeal rights" were read to the parents at that hearing, but the reporter's transcript does not reflect that the juvenile court gave such an advisement. The record also does not reflect that the father was given written notice of his appellate rights at the time, although a description of his appellate rights had been included in the Department's jurisdiction/disposition report. However, the minute order reflects that the jurisdiction/disposition hearing was uncontested, and the father submitted on the Department's report, without offering evidence, argument, or objections to the allegations of the petitions or to the Department's recommendation—unlike in *Albert A.* Under these circumstances, we conclude the jurisdiction/disposition hearing was not a "contested hearing on an issue of fact or law" that would have triggered the notice requirements of rule 5.590(a), and that the father is barred from challenging the visitation order entered at that hearing. (See *Liliana S.*, *supra*, 115 Cal.App.4th at p. 589.)

The father is also barred from challenging the visitation order entered at the six-month review hearing. The father did not appear at that hearing, and his counsel submitted the matter on the Department's report. Even assuming rule 5.590(a) applies to a contested six-month review hearing, it requires notice only to a parent who has attended the hearing, and thus it has no application here. The father's challenge to the order

9

terminating his reunification services and denying him visitation with the children is therefore barred.  (See *Liliana S.*, *supra*, 115 Cal.App.4th at p. 589.)

It is not clear whether the father also seeks to challenge the juvenile court's visitation findings and orders made at the 12-month review hearing.  Assuming that the father's claims do include those findings and orders, we address the question of whether the juvenile court's failure to advise him of his writ and appeal rights at that hearing bars those claims.

Rule 5.590(b)(1) requires that the court orally advise "all parties, and if present, the child's parent, guardian, or adult relative" that a party wishing to challenge the order setting a section 366.26 hearing must seek an extraordinary writ.  In addition, within one day after ordering a section 366.26 hearing, the court is required to send notice of that advisement by mail to any party who was not present.  (Rule 5.590(b)(2).)  The father was not present at the 12-month review hearing, and the record does not reflect that written notice about seeking an extraordinary writ was sent to him within one day of the hearing.  We therefore find that the father is not necessarily barred from challenging the visitation order made at that hearing.  (See *In re Cathina W.* (1998) 68 Cal.App.4th 716, 721-724; *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 671.)

However, we find that the father forfeited any claim that the juvenile court erred by finding, at the 12-month review hearing, that visitation would be detrimental to the children, because the father did not object to the juvenile court's order at that time.  An appellate court generally "will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.]"  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. ommitted (*S.B.*).)  The rationale for this principle of forfeiture "is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]"  (*Ibid*.)  At the 12-month review hearing, the father's attorney did not contest any of the Department's recommendations, including its recommendation that the juvenile court find that visitation would be detrimental to the children.  When the

10

juvenile court adopted the Department's findings and orders, the father's attorney did not object. Thus, the father may not now challenge the visitation order.

Finally, we decline to exercise our discretion to review the juvenile court's visitation order at the 12-month review hearing. The father suggests it would be appropriate to exercise our discretion because the challenged ruling involved the father's due process rights. (See *In re P.A.* (2007) 155 Cal.App.4th 1197, 1210 (*P.A.*) ["'an appellate court *may* review an error despite a party's failure to raise it below if due process rights are involved"].) "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue. [Citations.]" (*S.B., supra,* 32 Cal.4th at p. 1293.) "[T]he discretion must be exercised with special care in [dependency] matters," in which "considerations such as permanency and stability are of paramount importance. [Citation.]" (*Ibid.*) The instant case does not present an important legal issue, and the father did not challenge the juvenile court's visitation orders during any of the proceedings below. (See *P.A., supra,* at p. 1210 [father's "failure to seek any relief in the juvenile court" weighed against consideration of his claim].) As this case does not present the rare instance in which it would be appropriate to excuse forfeiture, we will not address the father's challenge to the visitation order made at the 12-month review hearing.

## IV.   DISPOSITION

The juvenile court's December 1, 2015 orders are affirmed.

11

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____

ELIA, ACTING P.J.


_____

MIHARA, J.