Filed 4/18/16  In re Z.G. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Z.G., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B266407 (Super. Ct. Nos. J1436138 & J1436139) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>C.G.,<br><br>    Defendant and Appellant. | |

C.G. (mother) appeals the juvenile court's orders terminating parental rights to her minor children, Z.G. and M.G., and selecting adoption as the permanent plan.  (Welf. & Inst. Code, § 366.26.)[1]  Mother contends she is entitled to a new section 366.26 selection and implementation hearing because she was denied effective assistance of counsel.  We disagree and affirm.

FACTS AND PROCEDURAL HISTORY

On June 30, 2014, Santa Barbara County Child Welfare Services (CWS) filed a dependency petition alleging that Z.G., age two, and M.G., age one, came within

_____

[1]All statutory references are to the Welfare and Institutions Code.

the jurisdiction of the juvenile court under section 300, subdivisions (b) and (g). The petition was based on mother's extensive history of domestic violence, child welfare interactions, substance abuse and criminal activity.

The children were detained following a domestic violence incident with M.G.'s father, which resulted in injuries to both parents.[2] According to mother, the couple drank alcohol and played "beer pong." Mother claimed M.G.'s father snorted her prescription pills and choked her until she lost consciousness. He stated that mother choked him and scratched his face. Mother was charged with domestic battery and violation of a restraining order. Mother signed a safety plan with CWS, releasing the children to the care of their maternal aunt.

Prior to that incident, CWS received five referrals, three of which included allegations of substance abuse, including marijuana use. Two reports alleged domestic violence between mother and M.G.'s father. Mother was arrested for one such incident on March 18, 2014, and on April 15, 2014, was convicted of battery on a spouse or ex-spouse.

According to the jurisdiction report, police responded to approximately 23 calls for assistance at mother's residence between January 1, and May 11, 2014. One incident involved a stabbing and another involved physical abuse of mother by her current boyfriend. Mother's probation officer reported that mother was required to attend a 52-week batterer's intervention program, to undergo random drug testing and to attend a parenting class.

At the time of their removal from mother's care, both children demonstrated developmental delays and symptoms of trauma, including anxiety, depression and indiscriminate attachment. M.G. and Z.G. rarely spoke, and they screamed or cried to have their needs met. They ate food with their hands, instead of using utensils. Z.G. engaged in self-harming behavior, such as hitting his head on the floor, and M.G. frequently walked into objects without expressing pain. Both children

_____

[2] M.G.'s father is not a party to this appeal.

2

were diagnosed with mental health problems and referred for therapy. CWS recommended that the children remain in out-of-home care and that mother receive family reunification services.

The juvenile court appointed Jessica Martinez to represent mother. Martinez arranged for another attorney to specially appear for her at the jurisdiction/disposition hearing. Pursuant to a settlement, the parties submitted on the documents. The juvenile court sustained the allegations in the section 300 petition, ordered family reunification services, including a second drug/alcohol assessment for mother, and set the matter for a six-month review hearing. Mother's case plan required that she participate in parenting classes, counseling and a substance abuse program.

Mother did not complete the second drug/alcohol assessment. She missed testing and failed to attend four scheduled substance abuse assessment appointments. Although mother initially engaged in some services, she stopped participating in her case plan in December 2014. Specifically, she ceased drug testing after three consecutive positive marijuana tests in October and November 2014. She stopped attending substance abuse treatment groups after just four sessions. Mother also missed parenting classes and therapy sessions, and completed only 13 of the 52 sessions of her batterer's intervention program.

Mother reported that she was pregnant in December 2014. She was referred to a second treatment program. When mother failed to attend that program, she was referred to a third program. Mother began that program on February 24, 2015, but continued to test positive for marijuana use. Mother admitted she was smoking marijuana three times a day.

Mother had two scheduled weekly visits with Z.G. and M.G. She attended most of the visits in September and October 2014, but only one visit in November and one in December. She missed visits in January and February 2015, prompting the case worker to report concerns about mother's lack of maturity and parenting skills.

Mother claimed she stopped participating in services because she was homeless and also because she had medical and psychological problems. In addition, she

3

reported that she was expected to be placed on bed rest when she was six months pregnant. She did not, however, indicate that she was currently on bed rest or that it had prevented her from attending treatment, counseling and visits with her children.

Before the contested six-month review hearing on March 25, 2015, CWS recommended that mother's family reunification services be terminated. At the hearing, Martinez rested on the evidence "with the understanding that [mother] will receive . . . two visits a month for two hours each, contingent upon clean testing." Martinez conceded that "right now [mother will] be testing positive for marijuana, but the levels will need to go down." The juvenile court found that CWS had complied with the case plan, that mother's progress had "been minimal, not adequate," that the children's placement was necessary and appropriate and that there was no "substantial probability of return by the 12-month review date."

The juvenile court set the matter for a section 366.26 selection and implementation hearing and advised mother of her right to file a writ petition. (See Cal. Rules of Court, rules 8.450, 8.452.) On March 26, 2015, mother filed a notice of intent to file a writ petition. Mother's counsel did not file the petition within 10 days as required and also did not file a letter under *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, indicating she had determined there were no issues to be raised. We subsequently dismissed the proceeding as abandoned. (See *In re Z.G.* (May 27, 2015, B262981) [nonpub. order].)

Mother requested a contested section 366.26 hearing and stated she "may also want a *Marsden* hearing."[3] The juvenile court ordered Martinez to prepare and file an offer of proof for the next hearing. Martinez did not submit an offer of proof, stating she "could not meet that burden." At mother's request, a *Marsden* hearing was held before Judge Roger T. Picquet. After hearing mother's complaints and Martinez's response, Judge Picquet denied mother's request for a new attorney. Although Judge Picquet "suggest[ed] that the [section 366.26] hearing go forward with [mother] as a

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

4

witness to give evidence that she believes is sufficient to [rebut] the allegations," he ordered Martinez to "provide a summary of what you anticipate your client's testimony would be as the requisite offer of proof." Martinez provided such an offer to support mother's position that termination of parental rights would be detrimental to the children and that because of their strong bond, the children will benefit from continuing a relationship with mother.

The section 366.26 report, filed on July 13, 2015, indicated that the children's placement was changed from relative placement to foster care on May 4, 2015. The relative requested removal of the children due to a significant change in family circumstances.

CWS reported that the children were happy and comfortable in their foster home. They referred to their foster parents as "Mom" and "Daddy," sought them out for care and expressed love and affection for them. They were less emotionally volatile and were able to be soothed by their foster parents, who wished to adopt them. The children also made improvements in their speech, and reduced their behavioral manifestations of trauma. They were able to speak coherently and to ask to have their needs met.

On August 20, 2015, mother appeared with Martinez at the section 366.26 hearing before Judge Arthur A. Garcia. Judge Garcia found that mother's offer of proof was insufficient and denied her request for a contested hearing. Martinez submitted with no argument. Judge Garcia found clear and convincing evidence that the children were adoptable and terminated parental rights. He authorized mother one supervised closure visit "upon providing clean tests within 24 hours of the scheduled visit." Mother appeals.

DISCUSSION

Mother contends the juvenile court's denial of her request to discharge her appointed trial counsel deprived her of her statutory right to effective assistance of counsel. She asserts that because of that error, the matter should be reversed and remanded for appointment of new counsel and the scheduling of a new selection and implementation hearing pursuant to section 366.26.

5

CWS responds that mother's claims of error prior to the section 366.26 hearing are barred by the waiver rule, and that even if we consider her claims, she has failed to show that her trial attorney did not act as a reasonably competent attorney in the field of dependency law. CWS further contends that regardless of any alleged incompetence, mother has not shown prejudice. We agree that mother has failed to demonstrate error.

### A. Applicability of Waiver Rule

Most of mother's claims of ineffective assistance of counsel relate to actions taken by her trial attorney prior to the section 366.26 hearing. Among other things, mother contends counsel was deficient by failing to present evidence at the six-month review hearing, by allowing mother to agree to a second drug and alcohol assessment and by not filing a writ petition challenging the dispositional and jurisdictional orders.

It is well established that the decision not to file a writ petition challenging dispositional orders and the underlying jurisdiction ordinarily waives any challenge to them asserted in a subsequent appeal. (*In re T.W.* (2011) 197 Cal.App.4th 723, 729; *In re Rashad B.* (1999) 76 Cal.App.4th 442, 447-448.) This so-called "waiver rule" is justified on numerous grounds, including: (1) "[T]he predominant interests of the child and the state in finality and reasonable expedition"; (2) the legislative intent to "expedite dependency cases and subordinate, to the extent consistent with fundamental fairness, the parent's right of appeal to the interests of the child and the state"; and (3) the "Legislature's intent, evident in section 366.26, subdivision (*l*), to restrict appeals challenging orders setting a [section 366.26] hearing." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1156-1157, fn. omitted.)

Mother contends the waiver rule should not apply here because Martinez's alleged ineffective assistance of counsel prevented mother from meaningfully participating in the case. (See *In re S.D.* (2002) 99 Cal.App.4th 1068, 1079.) She further contends it was Martinez's fault that no writ petition was filed. We need not, however, reach the issue of waiver because mother's appeal does not challenge the jurisdictional

6

and dispositional orders. She asks only that a new attorney be appointed and that a new selection and implementation hearing be held pursuant to section 366.26. It is irrelevant, therefore, whether counsel's performance was deficient in connection with the prior orders as she does not seek to overturn them on appeal. The only issue before us is whether trial counsel's alleged deficiencies entitle mother to a new section 366.26 hearing with the assistance of new counsel. We conclude that they do not.

### B. Denial of Marsden Motion

An indigent parent has a statutory and a due process right to competent counsel in dependency proceedings. (§§ 317, subd. (b), 317.5, subd. (a); *In re Meranda P., supra*, 56 Cal.App.4th at pp. 1152-1153.) An exhaustive *Marsden* hearing is not required; it is only necessary that the juvenile court "make *some* inquiry into the nature of the complaints against the attorney." (*In re James S.* (1991) 227 Cal.App.3d 930, 935, fn. 13.) Substitute counsel should be appointed when, and only when, in the exercise of the court's discretion, the court finds that the defendant has shown either that counsel is not providing adequate representation or that there is such an irreconcilable conflict between the parent and counsel that ineffective representation is likely to result. (See *People v. Smith* (1993) 6 Cal.4th 684, 696.)

During the *Marsden* hearing, mother claimed she had difficulty contacting Martinez. She complained that every time she told Martinez that she wanted a contested section 366.26 hearing, Martinez responded that her "parental rights will be taken away due to [Martinez] not having proof." Mother stated that she had evidence that would defeat CWS's claims against her. Martinez informed Judge Picquet that she had met with her client several times and had numerous e-mails with her discussing the case. She agreed that mother engaged in services in the beginning, but noted "there is quite some time when she failed to do what we asked of her. And towards the end, we are here at the end now, and, yes, she's visiting, she's having her visitations. And she's now saying she's going to do some parenting classes, but this is a new turn of events. This isn't what the past has been looking like. And we've already lost services due to no visitations and due to minimal participation."

Martinez conceded that mother did give her some proof of reasons for the lack of visits, but stated that "when you put up the amount of visits that she was supposed to make and the paperwork of doctors' appointments[,] I had dozens of unexcused visits. We're speaking about months. The [c]ourt can read the report, that I could not come up with evidence to give an excuse as to why my client missed all of those visits."

In denying the *Marsden* motion, Judge Picquet found mother had failed to demonstrate "that the relationship has deteriorated to any degree that would warrant a new attorney" or that Martinez had provided inadequate representation. Mother has not shown that this was an abuse of discretion. The record amply supports Martinez's representations to the court regarding mother's lack of participation in visitation and other reunification services. To the extent there is a "credibility question between defendant and counsel" at a *Marsden* hearing, the court is '"entitled to accept counsel's explanation."' (*People v. Smith, supra*, 6 Cal.4th at p. 696.)

### C. Ineffective Assistance of Counsel

"Under the standard test for a claim of ineffective assistance of counsel, [a parent] is required to demonstrate both that counsel's representation fell below an objective standard of reasonableness and resulting prejudice. [Citation.] A violation of the right to effective counsel is reviewed under the test of harmless error. [Citation.] 'Thus the parent must demonstrate that it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."' [Citation.]" (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.)

Mother argues that trial counsel was deficient by failing to inform Judge Garcia that Judge Picquet had granted mother the opportunity to testify at the section 366.26 hearing. The record does not support this argument. Judge Picquet "suggest[ed]" that mother be permitted to testify, but then ordered Martinez to prepare an offer of proof of her testimony to submit prior to the section 366.26 hearing. Judge Garcia, after reviewing the offer of proof, denied the request for a contested hearing. There is nothing to indicate that trial counsel acted incompetently by failing to mention Judge Picquet's statement about allowing her client to testify. The purpose of the offer of proof was to

8

determine whether a contested hearing was warranted, and that decision was left to the discretion of the juvenile court judge assigned to handle the hearing. (See *In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1116 [contested hearing not necessary where parent has failed to make a sufficient offer of proof].)

Even if mother had proven the alleged inadequacy of her trial counsel, she has not demonstrated prejudice. It is apparent from the record that any challenge to the children's adoptability or to the inapplicability of the parent-child beneficial relationship exception would have failed.

### (1) Children's Adoptability

"The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time. [Citations.] In making this determination, the juvenile court must focus on the child, and whether the child's age, physical condition, and emotional state may make it difficult to find an adoptive family. [Citations.] In reviewing the juvenile court's order, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time. [Citations.]" (*In re Erik P.* (2002) 104 Cal.App.4th 395, 400; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 406.)

Mother argues the evidence of adoptability was insufficient because the children were placed with their current foster family only three months before the section 366.26 hearing, were previously diagnosed with mental health problems and were removed from therapy when they moved to their current placement. We are not persuaded. Children do not need to be placed with prospective adoptive parents for a certain period of time before the court may terminate parental rights. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650.) Moreover, the fact that the children's foster parents wish to adopt them is substantial evidence that their "age, physical condition, mental state, and other matters relating to [each] child are not likely to dissuade individuals from adopting [them]. In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a

9

reasonable time either by the prospective adoptive parent or *by some other family*." (*Ibid*.)

Mother also contends that she was prejudiced because her trial attorney failed to cross-examine the social worker on the issue of adoptability. As CWS points out, trial counsel is not required to fight futile battles. Mother fails to demonstrate that even if a contested hearing had been held, the result would have been more favorable.

(2) Parent-Child Beneficial Relationship Exception

"If the court finds that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The parent-child beneficial relationship exception precludes adoption where (1) the parent has maintained regular visitation and contact with the child, and (2) the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) In deciding whether the parent-child beneficial relationship exception applies, "the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Historically, our courts have applied the substantial evidence standard of review when the trial court finds that the parent-child beneficial relationship exception does not apply. (*In re Autumn H., supra*, 27 Cal.App.4th at p. 576.) In *In re Bailey J.* (2010) 189 Cal.App.4th 1308, the Court of Appeal applied the substantial evidence standard to the trial court's determination whether a beneficial relationship exists, and the abuse of discretion standard to the court's determination whether the relationship is so important that it compels a plan other than adoption. (*Id.* at pp. 1314-1315; see *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622; *In re J.C.* (2014) 226 Cal.App.4th 503, 530-531.) Here, we affirm under either standard.

Mother regularly visited the children in September and October 2014, but after that, she visited sporadically. She attended one visit in November and one in

December. She missed the visits in January and February, and following the termination of reunification services, she missed visits due to drug testing issues. There is no question that mother loves her children, but the number of unexcused visits and mother's inability to maintain her sobriety weigh against application of the parent-child beneficial relationship exception. Simply put, the relationship between mother and her children did not outweigh the well-being they would gain in a permanent home with new, adoptive parents. "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038, superseded by statute on another ground as stated in *In re Eli F.* (1989) 212 Cal.App.3d 228, 234.) Mother makes no showing that the trial court erred in terminating parental rights and freeing the children for adoption. (See *In re K.P., supra*, 203 Cal.App.4th at pp. 622-623.)

DISPOSITION

The orders terminating mother's parental rights and selecting adoption as the permanent plan are affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, and Toni Lorien, Senior Deputy County Counsel, for Plaintiff and Respondent.