Filed 8/30/23  In re R.C. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re R.C. et al., Persons Coming Under the Juvenile Court Law. | B322826 (Los Angeles County Super. Ct. No. 22CCJP01404) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. F.C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Temporary Judge.  Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

The Los Angeles County Department of Children and Family Services (DCFS or the agency) initiated juvenile dependency proceedings concerning R.C., who was then 15, and her sister, A.C., who was 13. DCFS alleged that R.C. had mental and emotional problems causing her to attempt suicide and harm herself, and that her mother and father were unable to provide the care and supervision necessary to address those problems. The juvenile court sustained this jurisdictional allegation, declared both children dependents of the court, let the children remain in parental custody, and ordered DCFS to provide family maintenance services to mother, father, and the children.

On appeal, mother challenges the juvenile court's assertion of jurisdiction over R.C. and A.C. insofar as it was premised on mother's failure to provide adequate care and supervision.[1] She contends that at the time of the jurisdictional hearing, there was no risk of serious physical harm to the minors because she had completed a parenting class and enrolled R.C. and A.C. in therapy, R.C. had stabilized emotionally, and DCFS recommended terminating jurisdiction with a family custody order awarding mother sole physical and joint legal custody of the children.

_____

[1] Father is not a party to this appeal. As set forth in Discussion, part A, *post*, we nonetheless exercise our discretion to review mother's challenge to dependency jurisdiction based on her conduct.

We conclude that substantial evidence supported dependency jurisdiction over R.C. and A.C. At the beginning of DCFS's investigation, mother minimized the severity of R.C.'s mental and emotional problems, and R.C. had been in therapy for only three months prior to the jurisdictional hearing. Mother has not directed us to any evidence that upon completing her parenting course, she changed her dismissive attitude toward R.C.'s mental and emotional challenges, which included suicidal ideations. As for jurisdiction over A.C., although A.C. had not attempted to harm herself, she was nonetheless exposed to substantial risk of serious physical harm because she too had mental and emotional problems and endured stressors akin to those R.C. confronted, that is, A.C. had witnessed mother and father engage in acts of domestic violence, and A.C. had difficulty communicating her feelings to father.

Applying our deferential substantial evidence standard of review, we conclude the juvenile court did not err in taking jurisdiction over the children. We thus affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to this appeal.

In 2018, mother divorced father and obtained sole legal and physical custody of R.C. and A.C. Although the judgment of

---

[2] We derive part of our Factual and Procedural Background from undisputed portions of the parties' appellate briefing. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

3

dissolution grants a "[r]easonable right of visitation" to father, it does not include a visitation schedule.

On April 12, 2022, DCFS filed a juvenile dependency petition concerning R.C., then 15 years old, and A.C., then 13, pursuant to Welfare and Institutions Code[3] section 300, subdivisions (a), (b)(1), (c), and (j). Among other things, DCFS alleged that R.C. had "mental and emotional problems including suicidal and self-harming behaviors," and that mother and father were "unable to provide appropriate parental care and supervision of the child due to the child's mental and emotional problems."

At the outset of DCFS's investigation on February 22, 2022, R.C. told the agency she had disclosed on a form at a medical appointment that she had cut herself in the past.[4] R.C. stated her mother took her to a hospital the following day. R.C. informed the agency that she left the hospital before the psychiatric team could assess her because R.C. believed the process was taking too long.

R.C. told DCFS that she had "feelings of sadness since she was seven," and that "she believe[d] she has had feelings of wanting to hurt herself because of her lack of [a] close relationship with her parents and [her] feelings of sadness." R.C. disclosed that she tried to kill herself twice, and that she had previously cut herself on her forearms and inner thighs. R.C. indicated that the last time she had cut herself was

---

[3] Undesignated statutory citations are to the Welfare and Institutions Code.

[4] The remainder of this paragraph and the following three paragraphs summarize certain portions of DCFS's nondetention report filed in April 2022.

4

approximately six months prior to her February 2022 hospitalization, and that the last time she "ha[d] feelings of wanting to end her life" was approximately one month prior to her hospitalization. R.C. stated she had concealed the cuts on her body from mother and father. After this interview, the psychiatric mobile response team placed R.C. on a 72-hour psychiatric hold and transported her to a hospital.

During her February 22, 2022 interview with DCFS, mother told the agency that she did "not understand what [was] going on with" R.C., and mother expressed her beliefs that R.C. was "being very manipulative," R.C. "only want[ed] attention," and R.C. "ha[d] threatened to hurt herself because mother ha[d] restricted piercings/tattoos on [R.C.] and made her go to school when she did not want to." Mother also related that (1) she asked R.C. "what [the] child is 'depressed about' if she has everything," (2) R.C. responded that "she [was] traumatized because father used to hit mother," and (3) mother in turn told the child that because "mother and father ha[d] separated, . . . [the] child should not be thinking about it anymore."

Similarly, R.C. informed DCFS that although "she told father once and mother multiple times" that she "has had feelings of sadness," her parents responded by stating words to the effect that she has "nothing to be sad about." R.C. indicated that, as a consequence, "she stop[ped] talking [to mother and father] about" her feelings of sadness.

At an April 2022 hearing, the juvenile court (1) found father is the presumed father of R.C. and A.C.; (2) found a prima facie case of dependency jurisdiction over the children; (3) ordered the children remain in parental custody under DCFS's supervision; (4) ordered DCFS provide referrals for

5

"parenting counseling for teens and individual counseling"; and (5) instructed the agency to provide father referrals for anger management counseling.

On August 10, 2022, DCFS filed a first amended petition reasserting the allegations of the original petition and adding a count averring that jurisdiction was proper under section 300, subdivision (b)(1) because father expressed his desire in R.C.'s and A.C.'s presence to "terminate his parental rights."

On August 16, 2022, the juvenile court held the adjudication and disposition hearing. The court sustained a version of count b-1 of the first amended petition that the juvenile court amended by interlineation, and dismissed the remainder of the petition, including the count alleging that father had expressed his desire to terminate his parental rights in R.C.'s and A.C.'s presence.

As amended by the juvenile court, sustained count b-1 reads as follows: "The child, [R.C.,] has mental and emotional problems including suicidal and self-harming behaviors. On 02/19/2022, the child was hospitalized for the evaluation and treatment of the child's psychiatric condition. The child's mother . . . and father . . . are unable to provide appropriate parental care and supervision of the child due to the child's mental and emotional problems."[5]

---

[5] In her appellate briefing, mother tacitly assumes the juvenile court struck the following sentence from count b-1: "The mother['s] and father's inability to provide care and supervision of the child endangers the child's physical health and safety and places the child *and the child's sibling, [A.C.,]* at risk of serious harm, damage and danger." (Italics added.) Conversely, DCFS proceeds on the assumption that the court did not strike that sentence from count b-1. We need not resolve this discrepancy

6

As to the disposition phase of the hearing, the juvenile court declared R.C. and A.C. dependents of the court, ordered the children remain in parental custody, and ordered DCFS provide family maintenance services to mother, father, and the children. Mother's case plan required her to complete a developmentally appropriate parenting class and participate in (a) individual counseling to address case issues, and (b) conjoint counseling with father and the children. The court also ordered DCFS provide R.C. with age-appropriate counseling to address case issues.

Mother timely appealed the orders from the August 16, 2022 hearing.

## STANDARD OF REVIEW

Section 300, subdivision (b)(1) provides in pertinent part that dependency jurisdiction is proper if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or

---

because mother does not challenge the facial adequacy of the version of count b-1 sustained by the juvenile court, but, instead, contests only the evidentiary sufficiency of the court's decision to assert jurisdiction over R.C. *and A.C.* pursuant to section 300, subdivision (b)(1). (See *In re John M.* (2012) 212 Cal.App.4th 1117, 1123 [differentiating between facial and evidentiary challenges to jurisdiction, and observing that " ' "[i]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant" ' " unless " 'a parent claims [the] petition fails to provide actual notice of the factual allegations' "].) Mother does not contend she lacked notice that DCFS was requesting that the juvenile court exercise dependency jurisdiction over both children.

7

inability of the child's parent or guardian to adequately supervise or protect the child[, or] [¶] . . . [¶] [t]he willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment." (See § 300, subds. (b)(1)(A) & (b)(1)(C).)**6**

"[S]ection 300, subdivision (b)(1) . . . require[s] DCFS to demonstrate three elements by a preponderance of the evidence: (1) one or more of the statutorily specified omissions in providing care for the child[;] . . . (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (See *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.) " ' "The third element . . . effectively requires a showing that *at the time of the jurisdictional hearing* the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur.)" ' [Citation.] Evidence of past conduct may be probative of current conditions. [Citation.] To establish a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]' [Citation.]" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.)

---

**6** After the August 16, 2022 hearing, the Legislature enacted an amendment to section 300 that became effective on January 1, 2023. (See Stats. 2022, ch. 832, § 1 [filed with Sec'y of State on Sept. 29, 2022]; Cal. Const., art. IV, § 8, subd. (c)(1) [providing that this amendment to § 300 became effective on Jan. 1, 2023].) That amendment did not make any substantive changes to the provisions of section 300, subdivision (b)(1) that are applicable to this case. (See Stats. 2022, ch. 832, § 1 [indicating that the new amendment did not change the substance of the provisions of § 300, subd. (b)(1) that are quoted above].)

Although a juvenile court's "jurisdictional order is not appealable[,] a challenge to [its] jurisdictional findings [may typically] be raised in an appeal from the dispositional order. (See *In re T.W.* (2011) 197 Cal.App.4th 723, 729.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings [of the juvenile court,] . . . we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the [juvenile] court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the [juvenile] court. [Citations.]" ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

" 'The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings . . . .' [Citation.]" (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103 (*Lana S.*).)

## DISCUSSION

### A.    We Exercise Our Discretion To Consider the Merits of Mother's Appeal

As noted in our Factual and Procedural Background, *ante*, the juvenile court sustained amended count b-1 based on mother's *and father's* inability to supervise and properly care for R.C.  Mother acknowledges this finding and the fact that father has not appealed it.  Mother states she is challenging only "the

9

allegations pertaining to *her* failure to provide appropriate parental care to the minors . . . ." (Italics added.)

" '[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent. [Citations.]' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .' [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308.) A reviewing court may nonetheless elect to reach the merits of any such "[non]justiciable" appeal if a "single jurisdictional finding was the difference between [the parent] being an offending parent versus a nonoffending parent . . . ." (See *id.* at pp. 308–309, italics omitted from first quotation.) Because amended count b-1 was the only jurisdictional allegation sustained against mother, we exercise our discretion to address her challenge to that finding.

## B. Mother Fails To Demonstrate that the Juvenile Court's Jurisdictional Finding Is Not Supported by Substantial Evidence

Mother argues that "[s]ubstantial evidence does not support the juvenile court's finding that the minors were at current risk of harm due to mother's purported failure to provide appropriate parental care and supervision to the minors." (Boldface omitted.) Mother maintains that "the juvenile court based its jurisdictional findings on speculation that the family would not follow through with [R.C.'s] therapy." She asserts that "by the time of the contested hearing in August 2022, mother had completed her parenting class and [R.C.] was enrolled in therapy, and doing so well[ that DCFS] actually . . . recommended . . .

10

closing . . . the case due to [R.C.'s] emotional stability."  Mother further claims that R.C. informed the agency that "it was mother who took [R.C.] to the hospital for her depression and related behaviors . . . *one day* after [R.C.'s] need for psychiatric care was first brought to mother's attention at the doctor's office . . . ."  Similarly, mother insists she enrolled R.C. in therapy "almost immediately" after R.C. was released from her psychiatric hold.  For the reasons set forth below, we conclude mother fails to establish that the juvenile court's assertion of dependency jurisdiction over R.C. and A.C. lacks sufficient evidentiary support.

> 1.     *Mother fails to demonstrate that insufficient evidence supported the juvenile court's finding that R.C. was at substantial risk of serious physical harm as of the date of the jurisdictional hearing*

As we explained in our Factual and Procedural Background, *ante*, the nondetention report shows that at the beginning of the case, mother minimized the danger presented by R.C.'s mental and emotional problems.  For instance, mother intimated that R.C. claimed to have suicidal tendencies only because she wanted attention, and R.C. indicated that she stopped talking to her mother and father about her feelings of sadness after they told her she has nothing to be sad about.  Based on this evidence, the juvenile court reasonably could have found that absent DCFS's and the court's intervention, there was a substantial risk that mother would not have taken the steps necessary to protect R.C. from her suicidal and self-harming behaviors.  (Cf. *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 858–859, 865 [holding that "a parent's lack of insight may be considered by the juvenile court when assessing

whether a child may safely be returned home," italics & capitalization omitted].)

In her reply, mother seems to argue that her statements downplaying the gravity of R.C.'s mental and emotional problems amount to nothing more than "old, stale evidence." Specifically, mother contends that "by the time of the August 2022 hearing," R.C. "had stabilized emotionally, the minors were safe and happy in [mother's] care," mother had "enrolled the minors in therapy," "and [mother] had voluntarily completed a parenting class." Substantial evidence supported the juvenile court's contrary conclusion.

The parenting class to which mother refers is the Los Angeles County Office of Education's "Parent Project Parenting class . . . ." The record contains a letter dated July 15, 2022 from the instructor for the program, wherein the instructor stated that mother was "enrolled and attending the Parent Project Parenting class," and mother "[was] set to complete the parenting class [on] July 20, 2022," meaning she would have attended "a total of 10 sessions" on that date. Furthermore, at the August 16, 2022 hearing, mother's counsel represented that her client had "completed her parenting program"; counsel was presumably referring to the aforesaid Parent Project Parenting class.

Assuming arguendo that mother actually did complete this parenting course, that fact does not undermine the juvenile court's jurisdictional finding. Mother does not direct us to any evidence that by virtue of completing this class, she had changed her perspective and thereby ceased minimizing R.C.'s mental and emotional problems. Accordingly, we cannot conclude that the only reasonable inference that could be drawn from mother's

12

completion of this course is that her prior statements were "old" and "stale." (See *I.J.*, *supra*, 56 Cal.4th at p. 773 [holding that under the substantial evidence standard, a reviewing court " ' "draw[s] all reasonable inferences from the evidence to support the findings and orders of the dependency court" ' "].)

We acknowledge that R.C. and A.C. reported they felt safe in mother's care, and that mother told DCFS on March 23, 2022 that R.C. and A.C. had each been scheduled for a therapy assessment in mid-April 2022. We further acknowledge that in a last minute information report filed on August 10, 2022, DCFS suggested that R.C.'s emotional stability had improved by that point, and the agency recommended "terminating jurisdiction with a Family Law Order granting mother . . . full physical custody and joint legal custody."[7]

Yet, the record also contains a letter dated July 15, 2022 from R.C.'s mental health provider, wherein the therapist stated: (1) R.C. had been diagnosed with "Major Depressive Disorder," (2) R.C. began receiving "mental health services on 05/09/2022" and participating in weekly therapy sessions "from 07/08/22 until present," and (3) R.C. and her "caregiver would benefit from continuation of mental health services in order to assist with restoring [R.C.'s] functioning." Given that the juvenile court held

---

[7] Mother relies upon the following passage from the last minute information report: "Due to the current linkage and emotionally stability [*sic*] of [R.C.], [DCFS] recommends terminating jurisdiction with a Family Law Order granting mother . . . full physical custody and joint legal custody."

We further note that "a social service agency's recommendation is not binding on [a juvenile] court." (See *In re N.O.* (2019) 31 Cal.App.5th 899, 924.)

13

the jurisdictional hearing approximately one month after the date of this letter (see Factual & Procedural Background, *ante*), the court reasonably could have found that the substantial risk of serious physical harm arising from R.C.'s mental and emotional problems had not yet abated.

Furthermore, the record indicates that R.C. and A.C. began therapy *after* DCFS became involved in this matter in February 2022. Given the evidence that mother minimized the severity of R.C.'s mental and emotional problems, and the early stages of R.C.'s participation in therapy at the time of the hearing, it was reasonable for the juvenile court to find that absent DCFS and court involvement, there was a substantial risk that mother would not ensure that R.C. received the care she needed to refrain from harming herself. (See § 364, subd. (b) [indicating that a juvenile court asserts dependency jurisdiction over a child for the purpose of "eliminating the conditions or factors requiring court supervision"].)

In sum, mother has not shown that by the August 16, 2022 jurisdictional hearing, R.C. was no longer exposed to a substantial risk of serious physical harm.

2. *Mother fails to establish that dependency jurisdiction over A.C. was improper*

DCFS argues on appeal that A.C. "also was at risk because she too suffered from feelings of sadness and her physician noted [she had] mild depression." Passages from the nondetention report supply substantial evidence supporting this contention.[8] In particular, on February 22, 2022, A.C. told the agency she had

---

[8] The remainder of this paragraph discusses relevant portions of the nondetention report.

14

"feelings of sadness due to not being able to talk to her father . . . ." A.C. "began to tear" as she informed DCFS that father had yelled at her and he refused to listen to her when she told him to "make more time" to see her and R.C. A.C. stated she stopped talking about that issue with father when "she observe[d] he [was] upset." A.C. also told the agency that on "multiple occasions" "when she was 'little' father used to hit mother and mother used to hit him back to defend herself." Additionally, a record from A.C.'s February 19, 2022 visit with a medical provider indicated that the child had "Mild Depression."

Mother bears the burden of demonstrating that the juvenile court's exercise of jurisdiction over A.C. was not supported by substantial evidence. (*Lana S.*, *supra*, 207 Cal.App.4th at p. 103.) Yet, in her reply brief, mother fails to respond to DCFS's argument that evidence of A.C.'s sadness and mild depression supported the court's jurisdictional finding. Instead of addressing this evidence, mother observes that at the jurisdictional hearing, the children's counsel "ask[ed] for [A.C.] to be dismissed from the petition because she [was] not at risk." Because " 'unsworn statements of counsel are not evidence' " (see *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281, fn. 5), this remark from the minors' attorney does not establish " 'there is no evidence of a sufficiently substantial nature to support the finding . . . .' [Citation.]" (See *Lana S.*, at p. 103.)

Furthermore, the record shows that A.C. was exposed to stressors akin to those R.C. endured. Recall that R.C. had also witnessed instances in which father hit mother, and R.C. decided to conceal her feelings of sadness in response to statements made by her parents. (See Factual & Procedural Background, *ante*.)

R.C.'s depression and sadness had already manifested in two suicide attempts and cuttings to her forearms and inner thighs,[9] and A.C. too suffered depression and sadness after being exposed to similar stressors. The juvenile court could reasonably consider the similarities in R.C.'s and A.C.'s circumstances in determining whether to assert dependency jurisdiction over them. (See *In re Y.G.* (2009) 175 Cal.App.4th 109, 115–116 ["[E]vidence of a parent's misconduct with another child is admissible at a hearing on the section 300 petition. . . . [¶] . . . Implementation of th[e] purpose [of dependency law] requires the trial court to consider a broad class of relevant evidence in deciding whether a child is at substantial risk from a parent's failure or inability to adequately protect or supervise the child."].)[10]

Although the nondetention report shows that A.C. told the agency "she has never tried hurting herself nor has she ever had any thoughts of doing so," " '[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the

---

[9] Mother does not challenge the juvenile court's finding that R.C. "has mental and emotional problems including suicidal and self-harming behaviors," nor does she contest evidence that R.C. was diagnosed with Major Depressive Disorder, and that R.C. attempted suicide on two occasions and cut her forearms and inner thighs.

[10] We acknowledge that the nondetention report indicates R.C. disclosed that her maternal aunt's husband had "touched her private areas" "during an isolated incident" when she was five years old, and that A.C. told the agency "she has never been sexually abused by . . . any . . . adult." Mother, however, does not argue that the absence of any sexual abuse *to A.C.* demonstrates that A.C. was not at substantial risk of serious physical harm as of the date of the jurisdictional hearing.

steps necessary to protect the child.' [Citation.]" (*In re M.D.* (2023) 93 Cal.App.5th 836, 848.)  The severity of the potential harm, here, suicide and cutting one's body, counsels in favor of a finding of substantial risk.  (See *In re S.R.* (2020) 48 Cal.App.5th 204, 207 ["The Supreme Court has held that ' "even . . . a low degree of probability" ' can give rise to a substantial risk if ' "the magnitude of the harm is potentially great[,]" ' " quoting *I.J.*, *supra*, 56 Cal.4th at p. 778].)  Additionally, mother's prior statements downplaying R.C.'s mental and emotional health issues suggest that she would have the same minimizing attitude toward her younger daughter if A.C. developed self-harming behaviors like her sister.

In sum, the similarities between A.C.'s and R.C.'s circumstances, along with mother's dismissive attitude toward R.C.'s mental and emotional challenges, constituted substantial evidence supporting the juvenile court's assertion of dependency jurisdiction over A.C. pursuant to section 300, subdivision (b)(1).

## DISPOSITION

We affirm the juvenile court's August 16, 2022 orders. NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.                    CHANEY, J.

17